GEIGER, J.S.C. (temporarily assigned).
*242 Defendant A.T.C. appeals from a May 13, 2016 judgment of conviction and order denying his motion for a modification of sentence. After a review of the arguments in light of the record and applicable principles of law, we affirm defendant's convictions and remand for resentencing.
I.
We summarize the salient facts and procedural history from the record. In October 2014, the Passaic County Internet Crime Task Force conducted an investigation into the distribution of child pornography and identified defendant as a person of interest based on numerous child pornography files he had made available for others to download. A search warrant was *238 subsequently executed at defendant's residence on March 9, 2015. When officers explained their presence and the nature of their child pornography *243 investigation, defendant stated, "Might as well put the bracelets on me, yeah I did it." Based on the files found on defendant's computers and his admission that he had routinely viewed child pornography during the preceding seven years, defendant was arrested and charged with four counts of second-degree distribution of child pornography, N.J.S.A. 2C:24-4(b)(5)(a)(i), and four counts of third-degree possession of child pornography, N.J.S.A. 2C:24-4(b)(5)(b).
Defendant resided with his girlfriend and her minor child, M.L., for seven years preceding his arrest. When interviewed by investigators, defendant confessed to possessing pornographic videos of M.L. on his computer. He admitted to videotaping M.L. when she was in the bathtub, photographing and video recording M.L.'s vaginal area, and transferring the images to his computers. Defendant further revealed his conduct with M.L. began when she was ten years old, and the most recent incident occurred two months before his arrest, when she was twelve years old.
Investigators interviewed M.L. the same day. She disclosed that defendant began sexually abusing her when she was eight years old and had touched her vagina on numerous occasions, with the last incident occurring less than one month prior to the interview. M.L. asked defendant to stop, but he did not. Subsequent investigation revealed defendant took additional pornographic videos of M.L. with his cellphone.
On May 28, 2015, defendant waived his right to indictment and trial by jury and pled guilty to an accusation that charged him with first-degree aggravated sexual assault of a child under thirteen, N.J.S.A. 2C:14-2(a)(1) (count one), and second-degree endangering the welfare of a child by distribution of child pornography, N.J.S.A. 2C:24-4(b)(5)(a) (count two), in exchange for a recommended sentence of concurrent twenty-year prison terms without the possibility of parole.
During his plea hearing, defendant admitted digitally penetrating the vagina of M.L. in or about August 2014, when she under the age of thirteen. Defendant also admitted that during the same *244 time period he downloaded, viewed, and distributed child pornography containing images of children engaging in prohibited sexual acts through a "file sharing program."
Defendant was evaluated by Dr. Mark Frank at the Adult Diagnostic and Treatment Center (ADTC) in Avenel, New Jersey for the purpose of determining his eligibility for sentencing under the New Jersey Sex Offender Act, N.J.S.A. 2C:47-1 to -10 (requiring diagnosis of repetitive and compulsive behavior, amenability to sex offender treatment, and willingness to participate in such treatment). In a July 24, 2015 report, Dr. Frank opined defendant engaged in a "pattern of sexual attraction towards juveniles" and his "criminal sexual behavior was performed compulsively." Dr. Frank concluded defendant was eligible for sentencing under the purview of the Sex Offender Act given the "repetitive, compulsive elements discerned," the need for sex offender treatment, and defendant's willingness to participate in a program of therapy at the ADTC.
Prior to sentencing, defendant moved to modify the twenty-year term without parole provided for in the plea agreement. He sought to remove this matter from sentencing under the Jessica Lunsford Act (JLA), N.J.S.A. 2C:14-2, or, in the alternative, for the court to "exercise its inherent supervisory capacity" to craft a lesser sentence. Defendant argued he should be sentenced within the ordinary first-degree *239 range to a prison term of ten to twenty years, subject to an 85% parole ineligibility period under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, because the mandatory minimum prison term and parole ineligibility requirements imposed by the JLA did not apply to his case.
More specifically, defendant contended an amendment enacted on January 17, 2014, with an effective date of July 1, 2014, L. 2013, c. 214, § 3 (the July 2014 amendment), competed with a second amendment, which was enacted and became immediately effective on May 15, 2014, L. 2014, c. 7, § 1 (the May 2014 amendment), with regard to sentencing defendants convicted of aggravated sexual assault of a victim less than thirteen years old. Defendant *245 claimed the amendments created an ambiguity and argued the rule of lenity should apply.
The earlier enacted July 2014 amendment made a minor definitional modification to subsection (a)(7) of the statute, changing the language from "[t]he victim is one whom the actor knew or should have known was physically helpless, mentally incapacitated, or had a mental disease or defect" to "[t]he victim is one whom the actor knew or should have known was physically helpless or incapacitated, intellectually or mentally incapacitated, or had a mental disease or defect." N.J.S.A. 2C:14-2(a)(7) (emphasis added).
The May 2014 amendment, by enacting the JLA, imposed much longer mandatory minimum prison terms without parole eligibility. Prior to the May 2014 amendment, a person convicted of aggravated sexual assault of a victim under thirteen years old was subject to the ordinary first-degree sentencing range of ten to twenty years in prison and to NERA. Defendant claimed, because the earlier enacted July 2014 amendment became effective after the May 2014 amendment, and because the July 2014 amendment did not include the sentencing provisions added by the May 2014 amendment, NERA, rather than the JLA, should apply. Defendant argued the amendments created an ambiguity and the rule of lenity should apply. Defendant also claimed the May 2014 amendment violated the separation of powers clause of the New Jersey Constitution.
On May 13, 2016, the trial court issued an order and opinion denying defendant's motions. The trial court rejected defendant's argument that the sentencing provisions of the May 2014 amendment should not apply due to the subsequent effective date of the July 2014 amendment. The trial court reasoned:
While it may be true that the JLA does not mention [the July 2014 amendment], the amendments address separate and distinct provisions of the statute and can stand alone. Clearly, the Legislature did not change the sentencing provisions by enacting the [May 2014 amendment] for six weeks, which would be pointless. The effective dates of the two amendments to the same statute altering different provisions were surely meant to stand on their own without any language to the contrary. Since the plain meaning of the statute is clear, the analysis stops short of requiring the use of extrinsic evidence to decipher its interpretation. Moreover, a *246 plain reading of the statute does not lead to an absurd result, nor is it at odds with the overall statutory scheme-it rather imposes a harsher penalty on those individuals convicted of specifically enumerated aggravated sexual assaults.
The trial court analyzed the sentencing requirements imposed by the Legislature, noting:
Subsection (d) of N.J.S.A. 2C:14-2 authorizes the Prosecutor, in consideration of the interests of the victim, notwithstanding *240 the mandatory sentencing provision in the statute, to negotiate a plea agreement of not less than fifteen (15) years with fifteen years of parole ineligibility; however, there is no indication that the prosecutor is required to impose a fifteen year sentence; rather, it is in the prosecutor's discretion to impose a sentence under the mandatory minimum twenty-five years. In this case, the prosecutor chose to impose a mid-range sentence of twenty years, having considered the victims. Furthermore, subsection (d) of N.J.S.A. 2C:14-2 (under [the May 2014 amendment] ) states, in pertinent part, "the court may accept a negotiated plea agreement and upon such conviction shall impose the term of imprisonment and period of parole ineligibility as provided for in the plea agreement, and may not impose a lesser term of imprisonment or parole, or a lesser period of parole ineligibility than that expressly provided in the plea agreement." Pursuant to a plain reading of this statute, the [c]ourt may accept the plea agreement, and it must only impose the sentence afforded by the plea agreement; the [c]ourt may not, however, override the Prosecutor's decision to offer a mid-range sentence by sentencing Defendant to an even lesser term of imprisonment. The JLA took effect on May 15, 2014; Defendant was subsequently convicted of aggravated sexual assault in violation of this statute on May 28, 2015.
The trial court also rejected the argument that the JLA violated the separation of powers clause, concluding adequate checks and balances remain in place when sentencing a defendant under the JLA.
On the same day, defendant appeared for sentencing. The trial court found the offenses were committed in a "cruel and depraved manner" and the victim "was really incapable of exercising normal physical and mental power of resistance," noting that at the time of the offenses, the victim was only twelve or thirteen years old.[1] The court applied aggravating factors one, N.J.S.A. 2C:44-1(a)(1) (nature and circumstances of the offense, and the role of actor therein); two, N.J.S.A. 2C:44-1(a)(2) (gravity and seriousness of *247 harm inflicted on the victim); three, N.J.S.A. 2C:44-1(a)(3) (risk that the defendant will commit another offense); six, N.J.S.A. 2C:44-1(a)(6) (extent of defendant's prior criminal record and seriousness of offenses he is being convicted of); and nine, N.J.S.A. 2C:44-1(a)(9) (need for deterring the defendant and others from violating the law). The judge found aggravating factors one and two were not duplicative "given the circumstances here." The court also found mitigating factors six, N.J.S.A. 2C:44-1(b)(6) (defendant has compensated or will compensate the victim for the injury the victim sustained); and seven, N.J.S.A. 2C:44-1(b)(7) (defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before committing present offense). The trial court gave "great weight" to aggravating factors one, two and nine, slight weight to mitigating factor six, and concluded the aggravating factors outweighed the mitigating factors.
In accordance with the plea agreement, defendant was sentenced to concurrent twenty-year prison terms, without parole eligibility, to be served in whole or in part at the ADTC; parole supervision for life; mandatory parole supervision under *241 NERA. Defendant was also required to comply with the registration requirements under Megan's Law, N.J.S.A. 2C:7-1 to -23, and prohibited from having contact with M.L. pursuant to Nicole's Law, N.J.S.A. 2C:14-12 and N.J.S.A. 2C:44-8. This appeal followed.
Although originally submitted for review on an excessive sentencing oral argument calendar, Rule 2:9-11, the appeal was transferred to a plenary calendar. Defendant presents the following issues:
POINT I
BECAUSE THE LEGISLATURE FAILED TO CLEARLY AND DEFINITELY SPECIFY THE PUNISHMENT FOR VIOLATION OF N.J.S.A. 2C:14-2, [DEFENDANT] IS SUBJECT TO THE ORDINARY SENTENCE FOR A FIRST-DEGREE CRIME SUBJECT TO A NERA PAROLE DISQUALIFIER, RATHER THAN THE FAR HARSHER SENTENCE CREATED BY THE AMENDMENTS KNOWN AS THE JESSICA LUNSFORD ACT.
POINT II
*248 N.J.S.A. 2C:14-2(D) IS UNCONSTITUTIONAL ON ITS FACE BECAUSE IT IS A VIOLATION OF THE SEPARATION OF POWERS DOCTRINE.
POINT III
DESPITE HIS BELIEF HE WAS BOUND BY PROSECUTORIAL SENTENCING DISCRETION, THE JUDGE FOUND IMPROPER AGGRAVATING FACTORS AND FAILED TO FIND MITIGATING FACTORS.
II.
The arguments of unconstitutionality and applicability of the enhanced sentencing range for aggravated sexual assault raised here by defendant are questions of first impression. We review those questions de novo because they concern issues of law. State v. Robinson, 217 N.J. 594, 603-04, 92 A.3d 656 (2014) ; State v. Galicia, 210 N.J. 364, 381, 45 A.3d 310 (2012).
Defendant challenges the constitutionality and applicability of the enhanced sentencing provisions imposed by the JLA when the Legislature enacted the May 2014 amendment. Prior to the May 2014 amendment, a defendant convicted of first-degree aggravated sexual assault of a victim under thirteen years old could be sentenced to a prison term from ten to twenty years, subject to the parole ineligibility and mandatory parole supervision requirements imposed by NERA. The May 2014 amendment imposed the following mandatory minimum prison terms and parole ineligibility for aggravated sexual assault of a victim less than 13 years old:
Except as otherwise provided in subsection d. of this section, a person convicted under paragraph (1) of this subsection shall be sentenced to a specific term of years which shall be fixed by the court and shall be between 25 years and life imprisonment of which the person shall serve 25 years before being eligible for parole, unless a longer term of parole ineligibility is otherwise provided pursuant to this Title.
....
d. Notwithstanding the provisions of subsection a. of this section, where a defendant is charged with a violation under paragraph (1) of subsection a. of this section, the prosecutor, in consideration of the interests of the victim, may offer a negotiated plea agreement in which the defendant would be sentenced to a specific term of imprisonment of not less than 15 years, during which the defendant shall not be eligible for parole. In such event, the court may accept the negotiated plea agreement and upon such conviction shall impose the term of *242 imprisonment and period of parole ineligibility as provided for in the plea agreement, and may not *249 impose a lesser term of imprisonment or parole or a lesser period of parole ineligibility than that expressly provided in the plea agreement.
[ N.J.S.A. 2C:14-2(a), (d) (emphasis added).]
Defendant committed the aggravated sexual assault after the effective date of the May 2014 amendment.
Defendant argues the mandatory minimum prison terms and parole ineligibility imposed by the May 2014 amendment is inconsistent with the original sentencing range, which he contends was restored when the July 2014 amendment became effective. We are unpersuaded by this argument.
The Legislature is presumed to be "thoroughly conversant with its own legislation." Brewer v. Porch, 53 N.J. 167, 174, 249 A.2d 388 (1969). "Certainly, the Legislature is conversant with its own enactments, particularly when a statute is considered for amendment." Comm. of Petitioners for Repeal of Ordinance No. 522 (2013) of Borough of W. Wildwood v. Frederick, 435 N.J. Super. 552, 567, 89 A.3d 1270 (App. Div. 2014). The Legislature enacted the July 2014 amendment several months before the later May 2014 amendment adopting the JLA. Thus, it seems clear the Legislature intended the sentencing provisions to remain in effect even after the July 2014 amendment became effective.
The Legislature could not have intended to repeal portions of a statute not yet enacted. "[W]e will not interpret a statute in a way that 'leads to an absurd result.' " State v. Williams, 218 N.J. 576, 586, 95 A.3d 721 (2014) (quoting DiProspero v. Penn, 183 N.J. 477, 493, 874 A.2d 1039 (2005) ).
Moreover, considered in the context of the time it was adopted, the July 2014 amendment expanded the definition of victim in subsection (a)(7). Defendant was not convicted of violating subsection (a)(7); he was convicted of violating subsection (a)(1). The amendment to subsection (a)(7) does not pertain to sentencing under subsection (a)(1) and is not relevant. Instead, as noted by the trial court, the two amendments "address separate and distinct provisions of the statute and can stand alone."
*250 Defendant argues the rule of lenity should be invoked due to the ambiguity created by the successive amendments of N.J.S.A. 2C:14-2. We disagree. As explained by the Court in State v. Regis, "[t]he rule of lenity is an important principle of statutory construction; if a statutory ambiguity cannot be resolved by analysis of the relevant text and the use of extrinsic aids, the rule requires that the ambiguity be resolved in favor of the defendant." 208 N.J. 439, 451, 32 A.3d 1109 (2011) (citing State v. Gelman, 195 N.J. 475, 482, 950 A.2d 879 (2008) ). However, "the rule of lenity is applied only if a statute is ambiguous, and that ambiguity is not resolved by a review of 'all sources of legislative intent.' " Id. at 452, 32 A.3d 1109 (quoting State v. D.A., 191 N.J. 158, 165, 923 A.2d 217 (2007) ). That is not the case here.
The plain and unambiguous language of N.J.S.A. 2C:14-2 imposes a specific mandatory minimum sentence different than other second-degree offenses. Accordingly, we need not resort to utilizing extrinsic aids. Therefore, the trial court properly concluded the rule of lenity does not apply.
III.
Defendant further argues the mandatory sentencing provisions of the JLA
*243 violate the separation of powers clause of the New Jersey Constitution, N.J. Const. art. III, ¶ 1, and unconstitutionally impair the State's right to engage in plea bargaining. We disagree.
The separation of powers clause states, "[t]he powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution." Ibid."However, the fact that the actions of one branch will affect the exercise of power in another branch does not invalidate those actions as violative of the principles of separation of powers." State v. Hessen, 145 N.J. 441, 451, 678 A.2d 1082 (1996) (per curiam).
*251 "[I]t is within the sole power of the legislature to determine what acts constitute crime and to prescribe punishment for those acts." State v. Todd, 238 N.J. Super. 445, 455, 570 A.2d 20 (App. Div. 1990). As we recognized in State v. Oliver,
our courts have consistently held that the determination of penalties for crimes is a legislative function, not a judicial one. A trial court does not have the right to do whatever it pleases. The court's discretion in sentencing is limited by the sentencing ranges given to it by the Legislature. Furthermore, it is within the power of the Legislature to provide the minimum and maximum terms of a sentence.
[ 298 N.J. Super. 538, 549, 689 A.2d 876 (App. Div. 1996) (citations omitted).]
"For example, the Legislature may enact mandatory sentencing statutes which serve to restrict a court's sentencing decision." Todd, 238 N.J. Super. at 460, 570 A.2d 20 (citing State v. Des Marets, 92 N.J. 62, 80, 455 A.2d 1074 (1983) ). Generally, "whatever discretion courts are given, the basic legislative design must govern." State v. Lopez, 395 N.J. Super. 98, 108, 928 A.2d 119 (App. Div. 2007). "[T]he judiciary has no power ... to mete out a punishment in excess of that prescribed by the Legislature or to lessen or reduce a sentence where the Legislature has provided a mandatory penalty." State v. Bausch, 83 N.J. 425, 433, 416 A.2d 833 (1980) (citations omitted).
As recognized by the Court in State v. Vasquez, "when the Legislature chooses to prescribe a mandatory sentence for certain offenses, it is strongly motivated by substantial law enforcement concerns." 129 N.J. 189, 200, 609 A.2d 29 (1992) (citing Des Marets, 92 N.J. 62, 455 A.2d 1074 ). "When that intent and expression are clear and unmistakable, the Court will construe such sentencing schemes to effectuate fully their obvious penal purposes." Ibid. (citations omitted). We view the intent and expression of the Legislature in enacting the JLA to be clear and unmistakable-to impose substantial mandatory minimum sentences with no parole eligibility for this extremely serious crime perpetrated against children.
We recognize that "[w]hile it is within the sole power of the legislature to determine what acts constitute crime and to prescribe punishment for those acts, it cannot give the prosecuting *252 attorney the authority, after a conviction, to decide what the punishment shall be. That is a judicial function." Todd, 238 N.J. Super. at 455, 570 A.2d 20 (citations omitted) (quoting State v. Jones, 142 Ariz. 302, 689 P.2d 561, 564 (Ariz. App. Div. 1984) ). "[T]he parties to a plea agreement can only agree to a sentence that the prosecutor will recommend to the court and are not empowered to negotiate a sentence which is binding on the court." Id. at 459, 570 A.2d 20. *244 "The determination of a criminal sentence is always and solely committed to the discretion of the trial court to be exercised within the standards prescribed by the Code of Criminal Justice." State v. Warren, 115 N.J. 433, 447, 558 A.2d 1312 (1989) (citing State v. Roth, 95 N.J. 334, 471 A.2d 370 (1984) ). "Hence, separate prosecutorial discretion cannot be superimposed on the court's sentencing discretion." Id. at 449, 558 A.2d 1312.
With these principles in mind, the issue becomes whether N.J.S.A. 2C:14-2"preserves the ultimate sentencing decision to the court rather than the prosecutor." Todd, 238 N.J. Super. at 461, 570 A.2d 20.
We conclude the trial court retains the ultimate sentencing decision when sentencing under the JLA because it "may accept the negotiated plea agreement" at its discretion. N.J.S.A. 2C:14-2(d). Here, the word "may" is used permissively. See Aponte-Correa v. Allstate Ins. Co., 162 N.J. 318, 325, 744 A.2d 175 (2000) (stating "the word 'may' ordinarily is permissive"). The trial court may reject the plea "[i]f at the time of sentencing the court determines that the interests of justice would not be served by effectuating the agreement."R. 3:9-3(e). Consequently, the plea agreement is not binding on the trial court, as the statute "reserve[s] to the judiciary the power to approve or reject any agreement between the defendant and the State." Todd, 238 N.J. Super. at 462, 570 A.2d 20. For this reason, defendant's separation of powers argument fails.
Defendant further contends the JLA impermissibly interferes with prosecutorial discretion to engage in plea bargaining. Although defendant would otherwise have been sentenced between *253 twenty-five years and life imprisonment without parole pursuant to subsection (a), the prosecutor offered a negotiated plea deal of twenty years without parole, in accordance with subsection (d). N.J.S.A. 2C:14-2(a), (d). Defendant entered into the plea agreement and was sentenced in accordance with the terms of the agreement.
Although plea bargaining is an accepted practice in this state, "[t]here is no constitutional or statutory requirement that the New Jersey judicial system recognize plea bargaining." State v. Brimage, 271 N.J. Super. 369, 374, 638 A.2d 904 (App. Div. 1994). "Plea bargaining is not a right of a defendant or the prosecution. It is an accommodation which the judiciary system is free to institute or reject." Hessen, 145 N.J. at 452, 678 A.2d 1082 (quoting Brimage, 271 N.J. Super. at 379, 638 A.2d 904 ) (holding a ban against plea bargaining drunk driving cases does not violate separation of powers clause or impermissibly infringe on the powers of the prosecutor).
Moreover, "[w]hile a prosecutor may exercise discretion and enter into a plea agreement with a defendant, the sentencing judge may reject it if the interests of justice are not served." Brimage, 271 N.J. Super. at 374, 638 A.2d 904 (citing R. 3:9-3(e); Todd, 238 N.J. Super. at 461, 570 A.2d 20 ). "Sentencing remains a judicial function, and a sentencing court, notwithstanding the agreement of the parties, may refuse to accept any of the terms and conditions of a plea agreement." State v. Howard, 110 N.J. 113, 123, 539 A.2d 1203 (1988) (citing State v. Kovack, 91 N.J. 476, 485, 453 A.2d 521 (1982) ).
The JLA prohibits prosecutors from offering plea agreements and recommending sentences in the ordinary second-degree range of ten to twenty years subject to NERA. Instead, the prosecutor may only "offer a negotiated plea agreement in which the defendant would be sentenced to a specific term of imprisonment of not less than [fifteen] years, during which the defendant *245 shall not be eligible for parole." N.J.S.A. 2C:14-2(d). While the mandatory minimum sentencing provisions of the JLA limit the discretionary *254 authority of the prosecutor, we do not view this limitation as an impermissible restriction on the prosecutor's discretionary authority to offer recommended sentences as part of proposed plea agreements.
IV.
We next address defendant's arguments regarding the sentence imposed. Defendant argues the trial court erred by engaging in improper double-counting, applying aggravating factors one and two, N.J.S.A. 2C:44-1(a)(1) and (2), and failing to apply mitigating factor eight, N.J.S.A. 2C:44-1(b)(8). Defendant contends the sentence should be vacated and the case remanded for resentencing.
We review a "trial court's 'sentencing determination under a deferential [abuse of discretion] standard of review.' " State v. Grate, 220 N.J. 317, 337, 106 A.3d 466 (2015) (quoting State v. Lawless, 214 N.J. 594, 606, 70 A.3d 647 (2013) ). We affirm a sentence if: (1) the trial court followed the sentencing guidelines; (2) its findings of fact and application of aggravating and mitigating factors were "based upon competent credible evidence in the record;" and (3) "the application of the guidelines to the facts" of the case does not "shock[ ] the judicial conscience." State v. Bolvito, 217 N.J. 221, 228, 86 A.3d 131 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65, 471 A.2d 370 (1984) ).
"Elements of a crime, including those that establish its grade, may not be used as aggravating factors for sentencing of that particular crime." Lawless, 214 N.J. at 608, 70 A.3d 647 (citations omitted). To do so would result in impermissible double-counting. State v. Kromphold, 162 N.J. 345, 353, 744 A.2d 640 (2000) (citing State v. Yarbough, 100 N.J. 627, 633, 498 A.2d 1239 (1985) ). Sentencing courts "must scrupulously avoid 'double-counting' facts that establish the elements of the relevant offense." State v. Fuentes, 217 N.J. 57, 74-75, 85 A.3d 923 (2014) (citing Yarbough, 100 N.J. at 645, 498 A.2d 1239 ). A court, however, does *255 not engage in double-counting when it considers facts showing defendant did more than the minimum the State is required to prove to establish the elements of an offense. Id. at 75, 85 A.3d 923 ; see State v. Mara, 253 N.J. Super. 204, 214, 601 A.2d 718 (App. Div. 1992) ("The extent of the injuries, which exceed the statutory minimum for the offense, may be considered as aggravating.").
"At the time sentence is imposed the judge shall state reasons for imposing such sentence including ... the factual basis supporting a finding of particular aggravating or mitigating factors affecting sentence[.]" R. 3:21-4(g); see also N.J.S.A. 2C:43-2(e) ; State v. Kruse, 105 N.J. 354, 359-60, 521 A.2d 836 (1987). The "judge must determine whether specific aggravating or mitigating factors are grounded in credible evidence in the record and then weigh those factors." State v. Case, 220 N.J. 49, 54, 103 A.3d 237 (2014). The court's statement of the factual basis for its findings is necessary and "important for meaningful appellate review of any criminal sentence," because we are "expected to assess the aggravating and mitigating factors to determine whether they 'were based upon competent credible evidence in the record.' " State v. Bieniek, 200 N.J. 601, 608, 985 A.2d 1251 (2010) (quoting Roth, 95 N.J. at 364-65, 471 A.2d 370 ).
Although "sentencing courts frequently apply both aggravating factors one and two, each requires a distinct analysis of the offense for which the court sentences *246 the defendant." Lawless, 214 N.J. at 600, 70 A.3d 647. A finding of aggravating factor one requires the court to consider "[t]he nature and circumstances of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner." N.J.S.A. 2C:44-1(a)(1).
The Code does not define "heinous, cruel, or depraved manner." In order to find that an offense was committed in a "cruel" manner under the statute, there must be evidence defendant inflicted pain or suffering gratuitously and beyond that which *256 was required to establish the elements of the crime charged. State v. O'Donnell, 117 N.J. 210, 217-18, 564 A.2d 1202 (1989). In a concurring opinion in State v. V.R., Judge Humphreys concluded "secretly videotap[ing] a thirteen year old child while she was nude in the shower, asleep in bed and in the bathroom" constituted heinous acts. 387 N.J. Super. 342, 348, 903 A.2d 1116 (App. Div. 2006) (Humphreys, J., concurring). We find no published case law defining "depraved" in the context of N.J.S.A. 2C:14-2(a)(1) or N.J.S.A. 2C:24-4(b)(5)(a).
A finding of aggravating factor two requires the court to consider:
The gravity and seriousness of harm inflicted on the victim, including whether or not the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, ill-health, or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance.
[ N.J.S.A. 2C:44-1(a)(2).]
Aggravating factor two "focuses on the setting of the offense itself with particular attention to any factors that rendered the victim vulnerable or incapable of resistance at the time of the crime." Lawless, 214 N.J. at 608, 70 A.3d 647. A court may not base its finding of aggravating factor two solely upon the fact that the harm contemplated by the statute proscribing the criminal conduct occurred. Kromphold, 162 N.J. at 356-58, 744 A.2d 640. Rather, the sentencing court must "engage in a pragmatic assessment of the totality of harm inflicted by the offender on the victim, to the end that defendants who purposely or recklessly inflict substantial harm receive more severe sentences than other defendants." Id. at 358, 744 A.2d 640. In weighing aggravating factor two, the court may consider the victim's particular vulnerability to the perpetrator. See O'Donnell, 117 N.J. at 219, 564 A.2d 1202 ; State v. Martin, 235 N.J. Super. 47, 58-59, 561 A.2d 631 (App. Div. 1989).
Although the trial court recounted the underlying facts, it did not adequately state the factual or legal basis for applying aggravating factors one and two. The court's finding of aggravating *257 factor one was limited to a conclusory assertion that the offenses were committed in "a cruel and depraved" manner.
As to aggravating factor two, the judge found the victim "was really incapable of exercising normal physical and mental power of resistance" given her age at the time of the offenses. The judge did not express any other factual basis for concluding the victim was incapable of exercising normal physical and mental power of resistance, such as the relationship between M.L. and defendant.
Aggravating factor two refers to the "extreme youth" of the victim. N.J.S.A. 2C:44-1(a)(2). As to count one, the victim being less than thirteen years old is an element of the offense. N.J.S.A. 2C:14-2(a)(1). Similarly, as to count two, the victim being under eighteen years old is an element of the offense.
*247 N.J.S.A. 2C:24-4(b)(1) and (5). Because the age of a child victim is an element of the crimes of which defendant was convicted, it cannot be considered an aggravating factor for sentencing purposes. See State v. Yarbough, 195 N.J. Super. 135, 143, 478 A.2d 432 (App. Div. 1984) (holding that where the age of the victim is an element that makes sexual assault against her a crime of first degree, victim's age may not be used as an aggravating factor), remanded for resentencing on other grounds, 100 N.J. 627, 645-46, 498 A.2d 1239 (1985). In Yarbough, the victim was eleven years old. Ibid. Here, as to count one, the victim was between eleven and twelve years old at the time the offenses were committed. As to count two, defendant told investigators the images of child pornography involved children ranging in age from three to seventeen years old.
The record does not allow review of the findings assigned to each aggravating factor or whether the court engaged in impermissible double-counting.
Defendant's contention that the trial court erred in not finding mitigating factor eight (the circumstances of the offense are unlikely to recur), N.J.S.A. 2C:44-1(b)(8), lacks merit. Contrary to his position, intensive cognitive-behavioral treatment at ADTC, where he will spend at least part of his prison term;
*258 registration under Megan's Law, which restricts internet access; and parole supervision for life does not alone support this factor.
We discern no abuse of discretion in not applying mitigating factor eight. Defendant's conduct was determined to be repetitive and compulsive. Despite being aware his conduct was illegal and likely to result in his arrest, defendant was unable to control his sexual attraction toward juveniles.
Defendant also argues he is unlikely to reoffend because he will be almost sixty years old when he completes his sentence. We are unpersuaded by this argument. The "successful treatment of sex offenders appears to be rare." Doe v. Poritz, 142 N.J. 1, 15, 662 A.2d 367 (1995). As a result, "very few offenders sentenced to ADTC ... ever meet the dual standards required for parole from ADTC." Ibid. Consequently, "the large majority of ADTC inmates leave only after having served their maximum sentences." Id. at 16, 662 A.2d 367.
"The danger of recidivism posed by sex offenders and offenders who commit other predatory acts against children" led to the enactment of the registration requirements imposed by Megan's Law. N.J.S.A. 2C:7-1(a) ; see also Poritz, 142 N.J. at 15, 662 A.2d 367. "[O]f those who recidivate, many commit their second crime after a long interval without offense. In cases of sex offenders, as compared with other criminals, the propensity to commit crimes does not decrease over time." Poritz, 142 N.J. at 15, 662 A.2d 367. Thus, "the tendency to reoffend does not appear to decline with an offender's increasing age." Id. at 17, 662 A.2d 367.
V.
Finally, we address the twenty-year term with no parole eligibility imposed on count two for endangering the welfare of a child by distribution of child pornography, a second-degree offense that is not subject to the JLA or NERA. The range of incarceration for that offense is between five and ten years. N.J.S.A. 2C:43-6(a)(2). The maximum period of parole ineligibility is one-half of the prison term. N.J.S.A. 2C:43-6(b).
*259 The State concedes the prison term imposed on count two exceeded the statutory maximum. We agree that the sentence on count two was illegal. "[S]ince a trial court may not impose an illegal sentence, see *248 State v. Copeman, 197 N.J. Super. 261, 265, 484 A.2d 1250 (App. Div. 1984), a prosecutor should not offer a plea bargain which may not be legally implemented." State v. Baker, 270 N.J. Super. 55, 70, 636 A.2d 553 (App. Div. 1994). "[A] reviewing court is not free to ignore an illegal sentence." State v. Moore, 377 N.J. Super. 445, 450, 873 A.2d 587 (App. Div. 2005) (citing State v. Flores, 228 N.J. Super. 586, 594, 550 A.2d 752 (App. Div. 1988) ).
VI.
Based upon the illegal sentence on count two and the trial court's failure to sufficiently state the reasons supporting aggravating factors one and two, we are constrained to vacate defendant's sentence and remand for resentencing on both counts. On remand, the court shall fully detail the factual basis for each aggravating and mitigating factor, shall consider whether any impermissible double-counting will result, and shall perform the required qualitative weighing and balancing of the factors in accordance with the sentencing guidelines. The trial court shall also sentence on count two within the statutory range.
In summary, defendant's convictions are affirmed. We vacate the sentence and remand for resentencing in accordance with this opinion.
Affirmed in part, and vacated and remanded in part. We do not retain jurisdiction.

The reference to the victim possibly being thirteen years old during the incidents in question was incorrect. The victim was only twelve years old when defendant was arrested. The incidents took place before his arrest.