# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2155-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

PRESTON O. TAYLOR,
a/k/a PRESTON TAYLOR,

     Defendant-Appellant.

_____

Argued February 2, 2022 – Decided February 17, 2022

Before Judges Whipple, Geiger and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Accusation No. 17-04-0559.

Kevin S. Finckenauer, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Kevin S. Finckenauer, of counsel and on the briefs).

Monica do Outeiro, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Lori Linskey, Acting Monmouth

County Prosecutor, attorney; Monica do Outeiro, of counsel and on the brief).

PER CURIAM

This case arises from the murder of Sarah Stern by co-defendant Liam McAtasney as part of a robbery. Defendant Preston O. Taylor, who was convicted of robbery and related crimes for his involvement in the criminal episode, appeals from the prison term and fine that were imposed following his guilty plea to an accusation. We affirm in part and remand in part.

We glean the following facts from the record. McAtasney and Taylor became friends their freshman year of high school. In October 2016, Taylor lived with McAtasney in a home owned by McAtasney's parents. At the time, Taylor had a serious substance abuse problem.

McAtasney and Taylor were friends with Stern, whom Taylor had known for about five years. In September 2016, McAtasney learned of Stern's recent sizable inheritance from her mother's estate. McAtasney commented to Taylor that the amount of the inheritance was "worth killing someone for." McAtasney devised a plan to rob and murder Stern and involved Taylor in that plan. Taylor claims there was no set date for the robbery and that he did not believe McAtasney would carry out the plan.

On December 2, 2016, McAtasney called Taylor to explain that he and Stern were on their way to the bank, and this was McAtasney's chance to get

the money. Taylor then knew McAtasney was going to kill Stern. Taylor also knew he would have to help McAtasney dispose of the body. Later that day, McAtasney told Taylor that he went to the bank with Stern, where she withdrew the money, and then they went to Stern's house. McAtasney strangled Stern and hid her body in a bathroom. McAtasney told Taylor to go to Stern's house to dispose of the body because McAtasney had to go to work.

Taylor went to Stern's house, found her body in the bathroom, and moved it to her backyard. He also looked for McAtasney's cellphone, which was missing. Taylor placed the body under bushes and covered it with sticks and leaves. He then returned to their home and waited for McAtasney.

McAtasney and Taylor took Stern's car and her body to Belmar Bridge. They jointly threw Stern's body off the bridge. They left Stern's car at the bridge to make her death look like a suicide.

McAtasney and Taylor stole a safe from Stern's house, placed it in Taylor's car, and opened it after disposing of Stern's body. The safe contained approximately $10,000. They agreed to divide the money between them. They later placed the money in another safe that they buried in Sandy Hook. They buried Stern's safe in Shark River Park in Wall.

One of McAtasney's acquaintances, Anthony Curry, became suspicious of what happened to Stern after learning of her disappearance due to

conversations he had previously had with McAtasney about her. Curry contacted local police and then recorded a conversation he had with McAtasney that described the robbery and murder. The recording also detailed another plan McAtasney and Taylor had to burglarize a drug dealer's apartment in Galloway. Taylor was arrested the day after the recording was made.

McAtasney and Taylor planned that if Taylor was caught, he would tell detectives that Stern attempted suicide previously and that she had a falling out with her father. Taylor initially told that version to police and provided an alibi for McAtasney. Stern's body was never found.

On February 1, 2017, Taylor provided a formal statement to police that described the events in detail, including that McAtasney strangled Stern. On April 20, 2017, Taylor provided a formal statement to the Monmouth County Prosecutor's Office that provided additional details about the robbery, murder plot, and Stern's death.

On April 24, 2017, Taylor waived his right to indictment by grand jury and was charged in an accusation with: first-degree felony murder, N.J.S.A. 2C:11-3(a)(2) (count one); first-degree robbery, N.J.S.A. 2C:15-1 (count two); second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and 2C:15-1 (count three); second-degree disturbing or desecrating human remains, N.J.S.A. 2C:22-1(a)(1) and/or (a)(2) (count four); fourth-degree tampering

with physical evidence, N.J.S.A. 2C:28-6(1) (count five); third-degree hindering apprehension of self, N.J.S.A. 2C:29-3(b) (count six); and third-degree hindering apprehension of another, N.J.S.A. 2C:29-3(a) (count seven).

The waiver of indictment was part of a cooperation agreement and plea agreement Taylor entered into with the State on April 24, 2017. Taylor agreed to plead guilty to counts two through seven of the accusation in exchange for the State's recommendation of up to a twenty-year term on count two, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, with all other terms running concurrently, and dismissal of count one. The plea agreement was conditioned upon Taylor's compliance with the terms of the cooperation agreement, including providing truthful, complete, and accurate information and testifying truthfully at McAtasney's trial. Taylor denied agreeing with McAtasney to kill Stern but admitted to agreeing to participate in the robbery.

The plea hearing also took place on April 24, 2017. During the hearing, Taylor acknowledged that the sentencing range for first-degree robbery was ten to twenty years and that the State was going to recommend a twenty-year NERA term on count two, but that he could argue for a sentence on the low end of the range. Taylor provided a thorough, detailed factual basis for his plea. He testified $10,000 was taken from Stern's safe, of which he was to receive $3,000. The court accepted the guilty plea.

5

A jury convicted McAtasney of first-degree murder, first-degree robbery, first-degree felony murder, second-degree conspiracy to commit robbery, second-degree disturbing or desecrating human remains, third-degree hindering, and fourth-degree tampering with physical evidence. McAtasney was sentenced to life without parole and a consecutive ten-year term for desecrating her body.

Taylor was nineteen years old when the crimes were committed and pled guilty. He was twenty-one years old when sentenced on June 28, 2019. These were Taylor's first indictable convictions. He had one prior ordinance violation and a conditional discharge. Taylor had no known history of juvenile delinquency.

At the sentencing hearing, Taylor moved to allow his mother to speak on his behalf. The judge denied the request, noting he had read thirteen letters in support of defendant's character. The judge stated her comments would be redundant, put defendant's mother in a "difficult position," and be too time consuming.

The prosecutor argued that but for Taylor's actions, "Sarah Stern would still be here." He argued the court should apply aggravating factors one (the nature and circumstances of the offenses, and the actor's role in committing them was especially heinous, cruel, or depraved), N.J.S.A. 2C:44-1(a)(1); three

<sub>A-2155-19</sub>

(risk of reoffending), N.J.S.A. 2C:44-1(a)(3); seven (pecuniary incentive), N.J.S.A. 2C:44-1(a)(7); and nine (need for deterrence), N.J.S.A. 2C:44-1(a)(9); and mitigating factor twelve (cooperation with law enforcement), N.J.S.A. 2C:44-1(b)(12). The prosecutor contended that the aggravating factors outweighed the mitigating factor and suggested that a NERA term under fifteen years "would not be in the interest of justice."

Defense counsel argued in favor of applying mitigating factors seven (no history of prior delinquency or criminal activity), N.J.S.A. 2C:44-1(b)(7); eight (defendant's conduct is the result of circumstances unlikely to recur), N.J.S.A. 2C:44-1(b)(8); nine (defendant's character and attitude indicate he is unlikely to reoffend), N.J.S.A. 2C:44-1(b)(9); ten (defendant is particularly likely to respond affirmatively to probationary treatment), N.J.S.A. 2C:44-1(b)(10); eleven (imprisonment would entail excessive hardship), N.J.S.A. 2C:44-1(b)(11); and twelve.

The judge declined to apply aggravating factor one, noting he did not apply it when sentencing McAtasney. The judge found aggravating factor three because there was evidence of defendant planning to commit a robbery at Stockton University. The judge found aggravating factor seven because Taylor's involvement in the case was "financial." He also found aggravating factor nine, because "this [case] has gripped, clearly, the nation, at least the

7

East Coast . . . there's been television productions with regards to this and it has been something that's been highly covered in the media. And there's clearly a need to deter a situation when we're talking about three people that knew each other. . . ."

The judge found mitigating factor seven, and gave "some" weight to it, because defendant had little criminal history. He declined to find mitigating factor eight because he had found there was a risk Taylor would commit another offense. Despite the numerous letters submitted on Taylor's behalf, the judge rejected mitigating factor nine, because "of course [his] character is going to change once [he is] arrested and committed these crimes." The judge did not believe Taylor was unaware "McAtasney was going to do this. [Taylor] could have stopped it and [he] did not." The judge also declined to find mitigating factors ten and eleven. The judge found mitigating factor twelve, because defendant clearly cooperated with law enforcement as part of his cooperation agreement and plea bargain. The judge determined that the aggravating factors substantially outweighed the mitigating factors.

The judge sentenced Taylor in accordance with the plea agreement. On count two, Taylor received an eighteen-year NERA term and a $10,000 fine but did not order Taylor to pay restitution. The judge explained that $10,000 was the amount that was stolen from Stern, and that he did not understand why

8

defendant, someone in college, would commit a crime for this amount of money that he could earn himself. Count three merged into count two, and the other sentences ran concurrently to count two. On count four, defendant was sentenced to a ten-year term. On count five, defendant was sentenced to an eighteen-month term. On count six and seven, defendant was sentenced to five-year terms. Count one was dismissed per the plea agreement.

On August 30, 2019, the trial court denied defendant's motion for reconsideration of his sentence. As to aggravating factor three, the judge noted Taylor helped McAtasney plan the murder, and he planned another potential robbery or theft himself. He only came forward after their acquaintance, Curry, went to the police. The judge rejected Taylor's claim that applying aggravating factor seven would be double counting, explaining:

> It's not as to the murder itself but it goes to those same factors that I just elicited with regard to the planning, the covering up and . . . the charges themselves that it does deal with, it deals with [] tampering, the desecration of human remains and the hindering.

This appeal followed. Defendant raises the following points for our consideration.

POINT I

THE TRIAL COURT MADE NUMEROUS AND SUBSTANTIAL ERRORS IN FINDING AGGRAVATING FACTORS, DECLINING MITIGATING FACTORS, AND ASSIGNING

9

WEIGHT TO THOSE FACTORS, REQUIRING REVERSAL AND REMAND OF THIS MATTER FOR RESENTENCING.

A. The Trial Court Improperly Double Counted the Pecuniary Interest of the Offense When Imposing an Eighteen-year Sentence for First-Degree Robbery.

B. The Trial Court Improperly Gave Weight to the Media Attention of the Case in Finding Aggravating Factor Nine.

C. The Trial Court Committed Reversible Error by Using S.S.'s Death to Afford Heavier Weight to the Aggravating Factors.

D. The Trial Court Incorrectly Stated that Mr. Taylor's Character Prior to the Offense Could Not Be Taken into Account When Evaluating Mitigating and Aggravating Factors.

E. The Trial Court Abused Its Discretion in Rejecting Mitigating Factors Eight and Eleven Outright When They Were Supported by the Record.

POINT II

THE LAW REQUIRING SENTENCING MITIGATION FOR YOUTHFUL DEFENDANTS DEMANDS RETROACTIVE APPLICATION BECAUSE THE LEGISLATURE INTENDED IT, THE NEW LAW IS AMELIORATIVE IN NATURE, AND FUNDAMENTAL FAIRNESS REQUIRES RETROACTIVITY.

A. The Legislature Did Not Express a Clear Intent for Prospective Application.

10

B. The Other Language of the Mitigating Factor Indicates Retroactive Application; the Presumption of Prospective Application is Inapplicable; and the Law is clearly Ameliorative.

C. There is No Manifest Injustice to the State in Applying the Mitigating Factor Retroactively.

D. The Savings Statute Does Not Preclude Retroactive Application of Ameliorative Legislative Changes, Like the One at Issue Here.

E. Retroactive Application of the Mitigating Factor is Required as a Matter of Fundamental Fairness, and to Effectuate the Remedial Purpose of the Sentencing Commission's Efforts Regarding Juvenile Sentencing.

POINT III

THE TRIAL COURT ERRED IN REFUSING TO LET MR. TAYLOR'S MOTHER SPEAK ON HIS BEHALF.

POINT IV

THE TRIAL COURT FAILED TO CONDUCT AN ABILITY TO PAY HEARING WHEN IMPOSING THE $10,000 FINE FOR THE ROBBERY OFFENSE OR STATE ITS REASONING FOR IMPOSING SAME.

"[T]rial judges are given wide discretion so long as the sentence imposed is within the statutory framework." State v. Dalziel, 182 N.J. 494, 500 (2005).

"Appellate review of a criminal sentence is limited; a reviewing court decides

whether there is a 'clear showing of abuse of discretion.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)).

> Appellate courts must affirm the sentence of a trial court unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not "based upon competent credible evidence in the record;" or (3) "the application of the guidelines to the facts" of the case "shock[s] the judicial conscience."
>
> [Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

"These standards apply as well to sentences . . . that are entered as part of a plea agreement." State v. Sainz, 107 N.J. 283, 292 (1987).

Generally, an appellate court should defer to the sentencing court's factual findings and should not "second-guess" them. State v. Case, 220 N.J. 49, 65 (2014). "Although '[a]ppellate review of sentencing is deferential,' that deference presupposes and depends upon the proper application of sentencing considerations." State v. Melvin, 248 N.J. 321, 341 (2021) (alteration in original) (quoting Case, 220 N.J. at 65); accord State v. Trinidad, 241 N.J. 425, 453 (2020). If the sentencing court "follows the Code and the basic precepts that channel sentencing discretion[,]" the reviewing court should affirm the sentence, so long as the sentence does not "shock the judicial conscience." Case, 220 N.J. at 65. "A sentence imposed pursuant to a plea agreement are presumed to be reasonable . . . ." State v. Fuentes, 217 N.J. 57, 70-71 (2014).

12

In imposing a sentence, the court must make an individualized assessment of the defendant based on the facts of the case and the aggravating and mitigating sentencing factors. State v. Jaffe, 220 N.J. 114, 122 (2014). "[T]he judge shall state reasons for imposing [the] sentence including . . . the factual basis supporting a finding of particular aggravating or mitigating factors affecting sentence[.]" State v. A.T.C., 454 N.J. Super. 235, 255 (App. Div. 2018) (alterations in original) (quoting R. 3:21-4(g)). The "judge must determine whether specific aggravating or mitigating factors are grounded in credible evidence in the record and then weigh those factors." Ibid. (quoting Case, 220 N.J. at 54).

An appellate court's jurisdiction to review sentences includes the power to make new findings of fact, to "reach independent determinations of the facts," and to "supplement the record." State v. Jarbath, 114 N.J. 394, 410 (1989) (citing R. 2:5-5(a); R. 2:10-5). However, exercising original jurisdiction "should not occur regularly or routinely; . . . a remand to the trial court for resentencing is strongly to be preferred." Id. at 411.

The record supports the finding of aggravating factors three and nine. The judge found Taylor's plan to commit another robbery demonstrated the risk he would reoffend. While the judge noted the media attention given to the case, he explained that aggravating factor nine applied because of the nature of

13

the case.  Deterrence is considered "one of the most important considerations in sentencing, for the future protection of the public."  State v. Locane, 454 N.J. Super. 98, 126 (App. Div. 2018) (citing Fuentes, 217 N.J. at 78-79).  Aggravating factor nine should be found when an offense "by its very nature makes general deterrence absolutely meaningful."  Ibid.  Deterring future robberies to protect the public was an appropriate consideration.  We discern no abuse of discretion in finding aggravating factors three and nine.

Taylor argues that applying aggravating factor seven amounts to impermissible double counting.  We disagree.

"Elements of a crime, including those that establish its grade, may not be used as aggravating factors for sentencing of that particular crime."  A.T.C., 454 N.J. Super. at 253 (quoting State v. Lawless, 214 N.J. 594, 608 (App. Div. 2013)).  However, a court does not double count if it "considers facts showing defendant did more than the minimum the State is required to prove to establish the elements of an offense."  Id. at 255.

Here, the grading of the robbery as a first-degree offense was not based on the amount stolen.  Rather, it was based on the fact that "in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury . . . ."  N.J.S.A. 2C:15-1(b).  Likewise,

14

the amount of the theft was not an element of the remaining offenses. Finding aggravating seven was not double counting.

Aggravating factor seven applies when "[t]he defendant committed the offense pursuant to an agreement to either pay or be paid for the commission of the offense and the pecuniary incentive was beyond that inherent in the offense itself[.]" N.J.S.A. 2C:44-1(a)(7). The judge noted that Taylor's "involvement in this case was financial. He was basically being paid . . . a cut of whatever was found." Taylor said he received about $3,000 for his involvement. The judge noted, however,

> this doesn't really go to the robbery itself; it really goes to what he was basically, I guess you could use the word hired to do, help cover up the body, take the body from the bathroom to the bushes outside the home to the backyard and into the car. And then when [] McAtasney was not strong enough to take, unfortunately, Sarah's body out of the car, [defendant] came around the bridge, as I said last week, and then helped him, and unfortunately threw her deceased body over the bridge into the Shark River. So he was really aiding in the coverup. And then perpetuating the misleading of the police in statements, participating in the community search. You know, again floating out there the idea that this was a suicide so to throw the police off of the trail.
>
> [(emphasis added).]

The judge made similar comments during his oral decision denying reconsideration. Given this explanation, it seems clear that aggravating factor

15

seven was not applied to the robbery count; it was only applied to the remaining counts. We discern no abuse of discretion in finding aggravating factor seven on counts three through seven.

The judgment of conviction lists aggravating factor seven without specifying that it only applies to counts three through seven. "Where there is a conflict between the sentence as set forth in a judgment of conviction and the sentencing transcript, the sentencing transcript controls." Pressler & Verniero, Current N.J. Court Rules, cmt. 1.8 on R. 3:21-4 (2022) (citing State v. Walker, 322 N.J. Super. 535, 556 (App. Div. 1999)). We remand for the court to enter a corrected judgment of conviction stating that aggravating sentence seven does not apply to count two, as was indicated by the court in its oral sentencing decision.

We next address the judge's statement during sentencing that while "it's clear, [Taylor] did not commit the murder himself. He did everything but put his hands around her neck but he did not commit the murder." The judge also stated that Taylor "could have stopped [the murder] and [he] did not."

The record reflects that McAtasney began planning the robbery and concluded that Stern would be killed during the robbery, long before Taylor's involvement began. McAtasney made nearly all the decisions during the commission of the crimes. McAtasney strangled Stern. Taylor was not

16

present when Stern was strangled. Taylor was not charged with knowing or purposeful murder. Although Taylor was charged with felony murder, that count was dismissed by the State as part of the plea agreement.

Although a defendant can be vicariously liable for a co-defendant's actions, he is not "liable for aggravating factors not personal to him." State v. Megargel, 143 N.J. 484, 491 (1996) (citing State v. Rogers, 236 N.J. Super. 378, 387 (App. Div. 1989)). In State v. Anthony, we held it was inappropriate for a sentencing judge to hold the defendant vicariously liable for his co-defendant's murder during a robbery, when the defendant was acquitted of all charges except for agreement to commit the robbery. 443 N.J. Super. 553, 576 (App. Div. 2016). In Anthony, the defendant agreed to drive the co-defendant to burglarize a house if no one was home, but the co-defendant murdered an elderly man who was there. Id. at 562. We explained that it was error for the judge to "attribut[e] the violent, heinous acts of defendant's co-defendant to defendant, and, while there is certainly support in the record for the judge's conclusion that defendant knew the victim was very old, the jury concluded he did not know that [the co-defendant] would do personal violence to the victim." Id. at 576.

In Melvin, the Court addressed "whether a trial judge can consider at sentencing a defendant's alleged conduct for crimes for which a jury returned a

not guilty verdict."  248 N.J. at 325.  The jury found Melvin guilty of second-degree unlawful possession of a handgun but not guilty of murder or attempted murder.  Ibid.  At sentencing, the trial court "determined that the evidence at trial supported the conclusion that Melvin shot the victims" despite the jury's not-guilty verdicts on the murder charges.  Ibid.

> Citing United States v. Watts, 519 U.S. 148 (1997), the trial judge found that it was within the court's broad discretion at sentencing to consider all circumstances of the case, including evidence that Melvin was the shooter. Despite the jury's verdict, the trial court found that Melvin not only possessed the weapon, but used it to shoot three people. The trial court sentenced Melvin to a term of sixteen years' imprisonment with an eight-year period of parole ineligibility.
>
> [Ibid.]

The trial court granted the State's motion to sentence Melvin to an extended term as a persistent offender based on his criminal history.  Id. at 328.  "The trial court sentenced Melvin to the maximum – an aggregate twenty-year prison term with ten years of parole ineligibility."  Ibid.  "The sentencing judge determined that 'by a preponderance of the credible evidence at trial, . . . Melvin did in fact use a firearm, which resulted in the death of [the two victims] and the injury to [the restaurant owner].'"  Ibid. (alterations in original).  We affirmed Melvin's conviction but remanded for resentencing. Ibid.  Melvin was resentenced "to an aggregate extended term of sixteen years

18

with an eight-year period of parole ineligibility." Id. at 330. We affirmed that sentence. Ibid.

Melvin "argue[d] that sentencing based on acquitted conduct violated [his] federal and state constitutional rights to due process and fundamental fairness. [He] assert[ed] that punishing a person for conduct of which a jury acquitted them violates the protection afforded by acquittal and undermines the purpose of a jury trial." Id. at 339. The Court reviewed this question of law de novo. Id. at 341.

In Watts, the United States Supreme Court held that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." 519 U.S. at 157. Our Supreme Court determined that Watts was not controlling. Melvin, 248 N.J. at 343-46. The Court noted that "Watts was cabined specifically to the question of whether the practice of using acquitted conduct at sentencing was inconsistent with double jeopardy." Id. at 346.

The Court analyzed due process under the New Jersey Constitution. Id. at 347. It emphasized that "[t]he doctrine of fundamental fairness reflects the State Constitution's heightened protection of due process rights." Ibid. "In order to protect the integrity of our Constitution's right to a criminal trial by

19

jury, we simply cannot allow a jury's verdict to be ignored through judicial fact-finding at sentencing.  Such a practice defies the principles of due process and fundamental fairness."  Id. at 349.  The Court noted that "[t]o convict Melvin of unlawful possession, the jury did not make any finding as to whether he used the handgun he possessed."  Id. at 350.  Similarly, "in acquitting Melvin of any offenses that involved using the weapon -- or even of having had the 'purpose to use the firearm unlawfully,' . . . the jury's verdict should have ensured that Melvin retained the presumption of innocence for any offenses of which he was acquitted."  Ibid.

The Court held "that fundamental fairness prohibits courts from subjecting a defendant to enhanced sentencing for conduct as to which a jury found that defendant not guilty."  Id. at 326.  Therefore, jury findings "cannot be nullified through lower-standard fact findings at sentencing."  Id. at 352.  "Fundamental fairness simply cannot let stand the perverse result of allowing in through the back door at sentencing conduct that the jury rejected at trial."  Ibid.

Here, unlike in Melvin, Taylor did not go to trial.  A jury did not acquit him of felony murder.  That charge was dismissed pursuant to the terms of the plea agreement.  And unlike in Anthony, where the trial judge improperly found aggravating factor one by applying the co-defendant's actions to the

20

defendant, 443 N.J. Super. at 574, here the judge did not find aggravating factor one. Moreover, the judge did not attribute McAtasney's conduct to Taylor. Instead, he appears to have considered the extent of Taylor's involvement in applying aggravating factor seven to the counts other than the robbery. Those counts run concurrently to the term imposed on the robbery.

While the reasoning was perhaps inartfully stated, we discern no error. Consideration of the extent of Taylor's involvement in the incident was permissible even though the felony murder charge was dismissed.

We next address whether the trial court abused its discretion in declining to hear from Taylor's mother at sentencing. Defense counsel proffered that Taylor's mother would address "some of the mitigating factors, particularly whether there is a likelihood to change," that Taylor is "unlikely to commit another offense[,] . . . and whether his conduct was a result of [circumstances] unlikely to recur." Counsel represented that the mother's presentation would not be long.

The State contended the mother's statements would be duplicative of the character letters already submitted and would merely be a plea for mercy. The State also noted that the judge had heard Taylor's testimony during McAtasney's trial. The judge stated that he considered thirteen character letters submitted by defendant and defendant's own letter. The judge noted

21

that defense counsel's sentencing memorandum addressed mitigating factors seven through eleven. In addition, Taylor would be able to speak. The judge noted Taylor's remorse as indicated in the presentence report. The judge concluded the mother's comments would be redundant.

"[O]ther than defendants, and crime victims or their survivors, there is no absolute right to speak at a sentencing proceeding; instead, permitting others to address the court directly is a matter entrusted to the sentencing court's discretion." State v. Blackmon, 202 N.J. 283, 305 (2010). In exercising this discretion, the Court provided the following guidance:

> [Sentencing courts] need not entertain mere pleas for mercy and need not permit presentations that are cumulative or that merely repeat previously-submitted written comments. Nor are they required to permit presentations that are scurrilous, vengeful, or inflammatory. Moreover, courts should consider whether the individual seeking to be heard on defendant's behalf has information that bears upon an aggravating or mitigating factor, and may require a proffer consistent with one of those factors from defendant's counsel, electing to limit the grant of permission accordingly.
>
> [Ibid.]

A defendant is to be evaluated "as he stands before the court on that day" at sentencing. State v. Randolph, 210 N.J. 330, 354 (2012). Here, the crimes occurred on December 2, 2016. Taylor pled guilty on April 24, 2017. Due to the cooperation agreement, which required his truthful testimony at

McAtasney's trial, Taylor was not sentenced until June 28, 2019, more than two and one half years after the crimes were committed.

Considering the totality of the circumstances, we find no abuse of discretion. Defense counsel did not proffer any specific information that Taylor's mother would provide that was not already discussed in the character letters or which Taylor himself could not state during allocution.

Taylor further argues that the judge should have found mitigating factors eight and eleven. The judge applied aggravating factor three, finding a risk defendant would reoffend based on Taylor's plan to commit another robbery. As to mitigating factor eleven, Taylor claimed he had been attacked and beaten up while incarcerated. Noting this issue should be dealt with by the Department of Corrections, the judge also surmised that Taylor's treatment was unrelated to the length of his sentence. We discern no abuse of discretion in declining to apply either mitigating factor.

Taylor also argues he should be resentenced for the trial court to consider mitigating factor fourteen ("defendant was under [twenty-six] years of age at the time of the commission of the offense"), N.J.S.A. 2C:44-1(b)(14) because he was nineteen years old at the time of the offenses. Taylor contends mitigating factor fourteen should be applied because the legislature intended it to be applied retroactively and it is ameliorative in nature. We are mindful

23

that the Court granted certification in State v. Lane, Docket No. A-17-21, ___ N.J. ___ (2021), in which the legal issue is whether N.J.S.A. 2C:44-1(b)(14) applies retroactively, and if so, to what extent. Unless and until the Court holds to the contrary in Lane, we abide by our holding in State v. Bellamy, 468 N.J. Super. 29, 48 (App. Div. 2021), that mitigating factor fourteen does not apply retroactively absent resentencing "for a reason unrelated to the adoption of [N.J.S.A. 2C:44-1(b)(14)]."[1] Nothing in this opinion precludes the court on remand from amplifying its sentencing decision by considering whether the sentence would be different accounting for the new mitigating factor. Cf. State v. Canfield, __ N.J. Super. __, ___ (App. Div. 2022) (slip op. at 126).

In sum, applying the three-pronged test adopted in Roth, we find that the sentencing guidelines were not violated, the aggravating and mitigating factors were "based upon competent credible evidence in the record," and "the application of the guidelines to the facts of [the] case" did not "shock the judicial conscience." 95 N.J. at 364-65. We therefore affirm the prison terms imposed.

---

[1] The Court's recent decision in State v. Rivera, ___ N.J. ___ (2021), is distinguishable. In Rivera, the Court had an independent basis to remand for resentencing (the mistaken treatment of the defendant's youth as an aggravating factor). Id. at ___ (slip op. at 10). Accordingly, the trial court was permitted to apply mitigating factor fourteen. Here, we find no independent basis to remand the prison terms imposed for resentencing.

We reach a different conclusion regarding the fine imposed. Taylor argues the trial court erred by not conducting an ability to pay hearing before imposing the $10,000 discretionary fine on the robbery count. We agree. N.J.S.A. 2C:43-3(a)(1) authorizes the imposition of a fine not to exceed $200,000 upon conviction of a first-degree crime. However, the defendant must be afforded "the opportunity to be heard respecting his ability to pay the fine or to be heard as to the manner or method of payment." State v. Ferguson, 273 N.J. Super. 486, 499 (App. Div. 1994) (citing State v. Newman, 132 N.J. 159, 178-79 (1993); State v. De Bonis, 58 N.J. 182, 199-200 (1971)).

We remand for the trial court to conduct an ability to pay hearing pursuant to N.J.S.A. 2C:44-2(a)(2) to reconsider the amount of the fine imposed based on whether Taylor "is able, or given a fair opportunity to do so, will be able to pay the fine[.]"[2] "In determining the amount and method of payment of the fine, the court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose."

---

[2] The remand for the trial court to conduct a hearing on Taylor's ability to pay the fine imposed, or the manner of payment, does not constitute resentencing with respect to the prison terms imposed. "A fine or restitution is a separate kind of sentence." Cannel, New Jersey Criminal Code Annotated, cmt.2 on N.J.S.A. 2C:43-3 (2021). "[N.J.S.A.] 2C:44-2 provides criteria for imposition" of a fine. Ibid. The statutory aggravating and mitigating factors do not apply to the determination whether to impose a discretionary fine, and if so, the amount thereof.

N.J.S.A. 2C:44-2(c)(1). In doing so, the court shall also take into account the real time consequences of the sentence imposed. We note that before applying applicable credits, Taylor must serve more than fifteen years before being eligible for parole. That said, we express no opinion on the amount of the fine that is appropriate.

On remand, the court shall also enter a corrected judgment of conviction stating that aggravating sentence seven does not apply to count two.

To the extent we have not specifically addressed any of Taylor's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed in part and remanded in part for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2155-19