SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. A.T.C. (A-28-18) (081201)**

**Argued April 23, 2019 -- Decided August 8, 2019**

**PATTERSON, J., writing for the Court.**

In this appeal, the Court considers defendant A.T.C.'s facial constitutional challenge, premised on separation of powers principles, to the Jessica Lunsford Act (JLA), L. 2014, c. 7, § 1 (codified at N.J.S.A. 2C:14-2(a), (d)).

Defendant was arrested and charged with possession and distribution of child pornography. Defendant admitted that his computer files included pornographic videos of his girlfriend's daughter, that he had recorded those videos beginning when the child was ten years old, and that he had digitally penetrated the victim's vagina. Pursuant to a plea agreement that the prosecutor offered in accordance with N.J.S.A. 2C:14-2(d), defendant pled guilty to aggravated sexual assault of a child less than thirteen years of age. Defendant moved to modify his sentence, contending in relevant part that the JLA contravenes the separation of powers doctrine by vesting in the prosecutor sentencing authority constitutionally delegated to the judiciary.

The court denied defendant's motion. There was no discussion at defendant's plea hearing or sentencing hearing as to why the "interests of the victim" warranted a departure, or the degree of the departure, from the JLA's mandatory twenty-five-year term. Consistent with the plea agreement, the court imposed a term of twenty years' incarceration, with twenty years' parole ineligibility, for defendant's conviction of one count of first-degree aggravated sexual assault of a victim less than thirteen years of age.

The Appellate Division rejected defendant's separation of powers challenge to the JLA's mandatory sentencing provisions, 454 N.J. Super. 235, 250-54 (App. Div. 2018).

The Court granted defendant's petition for certification, "limited to defendant's facial challenge to N.J.S.A. 2C:14-2(d) as unconstitutional for violating the separation of powers doctrine." 236 N.J. 112 (2018). The Court stated that in addressing the question, it "may consider whether the State -- through the sentencing record and the [JLA] Guidelines -- sufficiently explained its use of discretion to permit effective judicial review as required in State v. Vasquez, 129 N.J. 189 (1992), such that A.T.C.'s sentence did not violate the separation of powers doctrine." Ibid.

1

**HELD:** The JLA does not violate the separation of powers doctrine, provided that the State presents a statement of reasons explaining its decision to depart from the twenty-five year mandatory minimum sentence specified in N.J.S.A. 2C:14-2(a), and the court reviews the prosecutor's exercise of discretion to determine whether it was arbitrary and capricious. So that the standard adopted today may be applied in this matter, the Court remands to the sentencing court for further proceedings in accordance with this opinion.

1. The JLA imposes a term of incarceration of twenty-five years to life, with a period of parole ineligibility of at least twenty-five years, on an offender convicted of an aggravated sexual assault in which the victim is less than thirteen years old. N.J.S.A. 2C:14-2(a)(1). It also permits a prosecutor, "in consideration of the interests of the victim," to waive the twenty-five-year mandatory minimum and offer the defendant a negotiated plea agreement in which the term of incarceration and the period of parole ineligibility may not be less than fifteen years. N.J.S.A. 2C:14-2(d). The sentencing court may accept that negotiated plea agreement, and if it does so, it must sentence the defendant in accordance with that agreement. (pp. 12-14)

2. The Attorney General has issued guidelines that govern the exercise of prosecutorial discretion under the statute. The JLA Guidelines, however, do not require the prosecutor to provide to the court a statement of reasons justifying the proposed reduction of the twenty-five-year term of incarceration and period of parole ineligibility imposed by N.J.S.A. 2C:14-2(a). Accordingly, no statutory provision or Guideline ensures that the court is informed of the prosecutor's reasoning when it determines whether to accept or reject a plea agreement offered pursuant to N.J.S.A. 2C:14-2(a). (pp. 14-17)

3. The Court reviews separation of powers principles and notes that criminal sentencing is a function that does not fit neatly within a single branch of government. (pp. 17-21)

4. In State v. Lagares, the Court considered a defendant's separation of powers challenge to a statute that delegated sentencing discretion to prosecutors in certain drug cases. 127 N.J. 20, 24 (1992). The Court agreed with the defendant that, in the absence of guidelines or "any avenue for effective judicial review," the statute at issue would be unconstitutional. Id. at 31. Noting its obligation "to so construe the statute as to render it constitutional if it is reasonably susceptible to such interpretation," the Court imposed three requirements. Id. at 32. First, it interpreted the statute to require the adoption of prosecutorial guidelines. Ibid. Second, "to permit effective review of prosecutorial sentencing decisions," the Court required prosecutors to "state on the trial court record the reasons for seeking an extended sentence." Ibid. Finally, the Court concluded that "an extended term may be denied or vacated" upon a showing that the prosecutor's decision to seek that sentence was arbitrary and capricious. Id. at 33. (pp. 21-23)

5. In Vasquez, the Court considered the separation of powers implications of plea bargaining under a provision of the Comprehensive Drug Reform Act that substantially

expanded prosecutorial discretion in drug prosecution plea agreements. 129 N.J. at 197-209. The defendant argued that the Legislature's grant of prosecutorial discretion in the provision contravened separation of powers principles. Id. at 195. The Court viewed the separation of powers issue in Vasquez to be "similar to that resolved in Lagares," and concluded that "the same interpretation is appropriate." Id. at 196. It construed the provision to preserve judicial authority to reject a plea bargain or post-conviction agreement that waived, or did not waive, the statutory parole disqualifier in the event that the prosecutor's discretion was exercised in an arbitrary or capricious manner. In the wake of Vasquez, the Attorney General issued Guidelines for the drug offense sentencing statutes that the Court considered in that decision. (pp. 23-26)

6. In State v. Brimage, the Court held that the Guidelines issued in response to Vasquez fell short of the mark, 153 N.J. 1, 14-15 (1998), and ordered the Attorney General promulgate "new plea offer guidelines, which all counties must follow," id. at 24-25. It directed that the revised guidelines "specify permissible ranges of plea offers for particular crimes" and that they be "more explicit regarding permissible bases for upward and downward departures." Id. at 25. "[T]o permit effective judicial review," the Court required that prosecutors "state on the record their reasons for choosing to waive or not to waive the mandatory minimum period of parole ineligibility specified in the statute," and their reasons for any departure from the guidelines. Ibid. (pp. 26-28)

7. The JLA Guidelines that govern plea bargaining pursuant to N.J.S.A. 2C:14-2(d) satisfy Lagares, Vasquez, and Brimage, with one necessary addition: they should be amended to instruct prosecutors to provide the sentencing court with a statement of reasons for a decision to offer a defendant, in a plea agreement, a term of incarceration or a term of parole ineligibility between fifteen and twenty-five years. Such a statement is essential to effective judicial review for the arbitrary and capricious exercise of prosecutorial discretion under N.J.S.A. 2C:14-2(d). The Court recognizes that the statement of reasons may implicate confidential information regarding the victim and members of the victim's immediate family. In the event that a prosecutor concludes that it is necessary in a given case to reveal such confidential information in a statement of reasons, the court should hold an in camera hearing to consider that information. In this case, the prosecutor did not provide the sentencing court with a statement of reasons for his decision to offer defendant a twenty-year term of incarceration with a twenty-year period of parole ineligibility. On remand, the prosecutor should provide such a statement of reasons to the sentencing court. The court should review whether the prosecutor's exercise of discretion was arbitrary and capricious. (pp. 28-32)

**The matter is remanded to the sentencing court for further proceedings.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON'S opinion.**

SUPREME COURT OF NEW JERSEY

A-28 September Term 2018

081201

State of New Jersey,

Plaintiff-Respondent,

v.

A.T.C.,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
454 N.J. Super. 235 (App. Div. 2018).

| Argued | Decided |
|--------|---------|
| April 23, 2019 | August 8, 2019 |

John Douard, Assistant Deputy Public Defender, argued
the cause for appellant (Joseph E. Krakora, Public
Defender, attorney; John Douard, of counsel and on the
briefs).

Jennifer E. Kmieciak, Deputy Attorney General, argued
the cause for respondent (Gurbir S. Grewal, Attorney
General, attorney; Jennifer E. Kmieciak, of counsel and
on the briefs, and Jana Robinson, Deputy Attorney
General, on the briefs).

JUSTICE PATTERSON delivered the opinion of the Court.

The Jessica Lunsford Act (JLA), L. 2014, c. 7, § 1 (codified at N.J.S.A. 2C:14-2(a), (d)) imposes a term of incarceration of twenty-five years to life, with a period of parole ineligibility of at least twenty-five years, on an offender convicted of an aggravated sexual assault in which the victim is less than thirteen years old. N.J.S.A. 2C:14-2(a)(1). The statute permits a prosecutor, "in consideration of the interests of the victim," to waive the twenty-five-year mandatory minimum and offer the defendant a negotiated plea agreement in which the term of incarceration and the period of parole ineligibility may not be less than fifteen years. N.J.S.A. 2C:14-2(d). The sentencing court may accept that negotiated plea agreement, and if it does so, it must sentence the defendant in accordance with that agreement. The Attorney General has issued the Uniform Plea Negotiation Guidelines to Implement the Jessica Lunsford Act, P.L. 2014, c. 7 (May 29, 2014), https:// www.state.nj.us/lps/dcj/agguide/lunsford_act.pdf (JLA Guidelines), which governs the exercise of prosecutorial discretion under the statute.

In this appeal, we consider defendant A.T.C.'s facial constitutional challenge, premised on separation of powers principles, to the JLA. Pursuant to a plea agreement that the prosecutor offered in accordance with N.J.S.A. 2C:14-2(d), which called for a reduced term of twenty years' incarceration and

twenty years' parole ineligibility, defendant pled guilty to a charge of aggravated sexual assault of a child less than thirteen years of age.

Prior to sentencing, defendant moved to modify his sentence, arguing that he should have been sentenced to fifteen years of incarceration rather than twenty years. He contended that the JLA and the JLA Guidelines violated the separation of powers doctrine. Defendant asserted that he should be exempt from sentencing under the JLA, or in the alternative, the JLA should be construed to authorize the court to sentence him to a term of incarceration as low as fifteen years. Rejecting that argument, the sentencing court denied the motion to modify the sentence. The Appellate Division affirmed that determination. State v. A.T.C., 454 N.J. Super. 235, 250-54 (App. Div. 2018).

We hold that the JLA does not violate separation of powers principles provided that (1) the State presents a statement of reasons explaining the departure from the twenty-five year mandatory minimum sentence specified in N.J.S.A. 2C:14-2(a), and (2) the sentencing court reviews the prosecutor's exercise of discretion to "protect against arbitrary and capricious prosecutorial decisions." State v. Vasquez, 129 N.J. 189, 196 (1992). We therefore remand the matter to the sentencing court so that the prosecutor may provide a statement of reasons for the decision to waive N.J.S.A. 2C:14-2(a)'s twenty-five-year term of incarceration and parole disqualifier "in consideration of the

3

interests of the victim," and the court may determine whether that decision was arbitrary and capricious.

I.

A.

In a 2014 investigation of internet crimes against children, the Passaic County Internet Crime Task Force concluded that defendant had made computer files containing child pornography available for other users of file-sharing services to download. Police officers executed a search warrant at the home that defendant had shared for seven years with his girlfriend and her minor daughter and found child pornography on defendant's computer.

Defendant was arrested and charged with four counts of second-degree distribution of child pornography, contrary to N.J.S.A. 2C:24-4(b)(5)(a)(i), and four counts of third-degree possession of child pornography, contrary to N.J.S.A. 2C:24-4(b)(5)(b). Defendant admitted that his computer files included pornographic videos of his girlfriend's daughter and that he had recorded those videos on a number of occasions beginning when the child was ten years old.

The victim, then twelve years old, told police that defendant had been sexually abusing her since she was eight years old. She stated that defendant, ignoring her objections, had touched her vagina many times. Some of the

4

videos found in defendant's computer files show defendant touching the victim's vagina while she audibly implores him to leave her alone.

Defendant waived his right to indictment and a trial by jury. Pursuant to a plea agreement with the State, defendant pled guilty to an accusation charging him with first-degree sexual assault of a child under thirteen, contrary to N.J.S.A. 2C:14-2(a)(1), an offense subject to the mandatory minimum term of incarceration set forth in the JLA, as well as second-degree endangering the welfare of a child by distribution of child pornography, contrary to N.J.S.A. 2C:24-4(b)(5)(a). At his plea hearing, defendant provided a factual basis for both charges; with respect to the first-degree aggravated sexual assault of a child under thirteen, defendant admitted that he had digitally penetrated the victim's vagina.

At defendant's plea hearing, the court identified the recommended term of incarceration for defendant's aggravated sexual assault conviction pursuant to the plea agreement between the State and defendant: a twenty-year term of incarceration, with a twenty-year period of parole ineligibility. The court confirmed defendant's understanding that if he were sentenced in accordance with his plea agreement, he would serve all of his twenty-year prison sentence and would not be eligible for parole prior to the expiration of that sentence. The court accepted defendant's plea of guilty to both charges.

5

After his guilty plea, but prior to the scheduled date of his sentencing, defendant moved to modify his sentence. His motion was premised in part on a contention that the JLA contravenes the separation of powers doctrine by vesting in the prosecutor sentencing authority constitutionally delegated to the judiciary.[1]

The court denied defendant's motion. It held that because sentencing courts retain the right to reject plea agreements under the JLA in the interests of justice, and the JLA preserves "checks and balances" between the executive and judicial branches, the statute did not run afoul of the separation of powers doctrine. The court also found that defendant's motion to modify his sentence was premature because the motion was filed prior to sentencing.

At defendant's sentencing hearing, the court found that the aggravating factors outweighed the mitigating factors.[2] Defendant argued that he should

---

[1] Defendant also argued before the sentencing court that he should be exempt from the JLA, or sentenced to a term of incarceration shorter than that required by the JLA, because a minor amendment to N.J.S.A. 2C:14-2 that shortly preceded the JLA gave rise to an ambiguity in that statute and restored the pre-JLA sentencing range for his first-degree offense. See L. 2013, c. 214, § 1; L. 2014, c. 7, § 1. The sentencing court rejected that argument, and the Appellate Division affirmed. A.T.C., 454 N.J. Super. at 248-50. That argument is not relevant to this appeal.

[2] The court found aggravating factors one ("[t]he nature and circumstances of the offense"), two ("[t]he gravity and seriousness of harm inflicted on the victim"), three ("[t]he risk that the defendant will commit another offense"), and nine ("[t]he need for deterring the defendant and others from violating the

6

not be sentenced pursuant to the JLA, or, in the alternative, that he should be sentenced under the JLA to a fifteen-year term of incarceration, not the twenty-year term contemplated by the plea agreement. The prosecutor argued that the harm to the victim, among other factors, warranted the sentence recommended by the State.

Although the State advised the sentencing court prior to defendant's sentencing that it had "balance[d] the relevant factors set forth by the Attorney General Guidelines," it did not present a statement of reasons justifying its decision to waive the twenty-five-year term of incarceration and period of parole ineligibility prescribed by N.J.S.A. 2C:14-2(a). There was no discussion at either defendant's plea hearing or his sentencing hearing as to why the "interests of the victim" warranted a departure, or the degree of the departure, from the JLA's mandatory twenty-five-year term. See N.J.S.A. 2C:14-2(d).

---

law"). N.J.S.A. 2C:44-1(a)(1), (2), (3), (9). It also found mitigating factors six ("[t]he defendant has compensated or will compensate the victim of his conduct for the damage or injury that [she] sustained, or will participate in a program of community service"), and seven ("[t]he defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense"). N.J.S.A. 2C:44-1(b)(6), (7).

7

Consistent with the plea agreement, the court imposed a term of twenty years' incarceration, with twenty years' parole ineligibility, for defendant's conviction of one count of first-degree aggravated sexual assault of a victim less than thirteen years of age. It imposed a concurrent twenty-year term, with twenty years' parole ineligibility, for defendant's conviction of distribution of child pornography. The court also sentenced defendant to parole supervision for life, N.J.S.A. 2C:43-6.4; mandated that he comply with the requirements of Megan's Law, N.J.S.A. 2C:7-1 to -23; and assessed statutory fines and penalties, N.J.S.A. 2C:43-3.1 to -3.3, -3.6 to -3.8; N.J.S.A. 2C:14-10.

B.

Defendant appealed his convictions and the court's order denying his motion to modify his sentence. He asserted, among other arguments, that the JLA is facially unconstitutional because it violates the separation of powers doctrine.

The Appellate Division rejected defendant's separation of powers challenge to the JLA's mandatory sentencing provisions. A.T.C., 454 N.J. Super. at 250-54. It reaffirmed the Legislature's sole authority to define what conduct constitutes a crime and to determine punishment for that conduct, including the imposition of mandatory sentences. Id. at 251. The Appellate Division noted, however, that the Legislature "cannot give the prosecuting

8

attorney the authority, after a conviction, to decide what the punishment shall be. That is a judicial function." Id. at 251-52 (quoting State v. Todd, 238 N.J. Super. 445, 455 (App. Div. 1990)). It deemed the allocation of authority in plea bargaining under N.J.S.A. 2C:14-2(d) to comport with the separation of powers doctrine because the statute "reserve[s] to the judiciary the power to approve or reject any agreement between the defendant and the State." Id. at 252 (alteration in original) (quoting Todd, 238 N.J. Super. at 462).

The Appellate Division vacated defendant's sentence on grounds irrelevant to this appeal,[3] and remanded for resentencing. Id. at 258-59.

## C.

This Court granted defendant's petition for certification, "limited to defendant's facial challenge to N.J.S.A. 2C:14-2(d) as unconstitutional for

---

[3] The Appellate Division held that the sentencing court did not sufficiently explain its reasons for finding aggravating factors one and two. A.T.C., 454 N.J. Super. at 254-58. It directed that on remand, the court "fully detail the factual basis for each aggravating and mitigating factor, . . . consider whether any impermissible double-counting will result, and . . . perform the required qualitative weighing and balancing of the factors" pursuant to statutory guidelines. Id. at 259. In addition, the Appellate Division held -- as the State conceded -- that the twenty-year term of incarceration that the sentencing court imposed for defendant's conviction of second-degree endangering the welfare of a child by distribution of child pornography, contrary to N.J.S.A. 2C:24-4(b)(5)(a), was an illegal sentence. Id. at 258-59. The Appellate Division directed the court on remand to resentence defendant for his endangering conviction within the range of the ordinary five- to ten-year term of incarceration for a second-degree offense, with a maximum period of parole ineligibility of one-half of the prison term. Ibid.

9

violating the separation of powers doctrine." 236 N.J. 112 (2018). The Court stated that in addressing the question, it "may consider whether the State -- through the sentencing record and the [JLA] Guidelines -- sufficiently explained its use of discretion to permit effective judicial review as required in State v. Vasquez, 129 N.J. 189 (1992), such that A.T.C.'s sentence did not violate the separation of powers doctrine." Ibid.

## II.

## A.

Defendant contends that the JLA is facially unconstitutional under Vasquez, 129 N.J. at 196, and State v. Lagares, 127 N.J. 20, 26-33 (1992), because it authorizes a prosecutor to negotiate a plea agreement with a recommended sentence outside the statutory range without presenting a statement of reasons that would allow for judicial review. Defendant argues that, in contrast to other sentencing statutes that the Court has upheld against separation of powers challenges, the JLA affords prosecutors the discretion to determine the precise number of years, within a range of fifteen to twenty-five years, that a defendant will serve in prison. In his supplemental brief, defendant contends that the JLA Guidelines cannot ensure effective judicial review because they are based not on defendant-specific criteria, but on the interests of the victim.

10

Defendant urges the Court to hold the JLA unconstitutional unless the Legislature amends it to confer on sentencing judges the discretion to sentence defendants to any term of incarceration between fifteen and twenty-five years. In the alternative, he asks the Court to mandate revised JLA Guidelines requiring prosecutors to provide to the sentencing court reasons for a reduced sentence that are amenable to judicial review.

B.

The State contends that the JLA comports with separation of powers principles, because the JLA Guidelines properly channel prosecutorial discretion in plea-bargaining pursuant to N.J.S.A. 2C:14-2(d).  It acknowledges that in accord with N.J.S.A. 2C:14-2(d)'s emphasis on the victim's interests, the JLA Guidelines differ from the Guidelines promulgated for certain drug prosecutions pursuant to Vasquez and State v. Brimage, 153 N.J. 1, 22-23 (1998).  The State asserts, however, that the JLA Guidelines provide for effective judicial review when a prosecutor offers a defendant a plea agreement that departs from the twenty-five-years-to-life term of incarceration required by N.J.S.A. 2C:14-2(a).  It enumerates several applications of the JLA Guidelines factors that might prompt a prosecutor to depart from the statutory term and are subject to judicial review.

The State objects to any requirement that it disclose certain categories of sensitive information related to a child victim when it presents a statement of reasons to the sentencing court.

III.

A.

Pursuant to N.J.S.A. 2C:14-2(a), "[a]n actor is guilty of aggravated sexual assault if he commits an act of sexual penetration with another person under any one of the following circumstances." The statute enumerates seven circumstances under which an act of sexual penetration constitutes aggravated sexual assault, one of which is that "[t]he victim is less than 13 years old." N.J.S.A. 2C:14-2(a)(1).

Before the Legislature enacted the JLA, defendants convicted of violations of N.J.S.A. 2C:14-2(a), including those convicted of aggravated sexual assault against a child less than thirteen years old, contrary to N.J.S.A. 2C:14-2(a)(1), were sentenced within the ten- to twenty-year range set forth in N.J.S.A. 2C:43-6(a)(1) for first-degree offenses. N.J.S.A. 2C:14-2 (2013).

On May 15, 2014, the Legislature enacted the JLA. L. 2014, c. 7, § 1.[4] The JLA significantly enhanced the sentencing exposure of defendants

---

[4] The Legislature based New Jersey's JLA in part on a Florida statute, the Jessica Lunsford Act, 2005 Fla. Laws c. 28. A. Judiciary Comm. Statement to A. 892 (Feb. 24, 2014). The Florida act, named for a nine-year-old Florida girl

12

convicted of the aggravated sexual assault of a child under thirteen years of age. It provides in part that,

> [e]xcept as otherwise provided in subsection d. of this section, a person convicted under paragraph (1) of this subsection shall be sentenced to a specific term of years which shall be fixed by the court and shall be between 25 years and life imprisonment of which the person shall serve 25 years before being eligible for parole, unless a longer term of parole ineligibility is otherwise provided pursuant to this Title.
>
> [N.J.S.A. 2C:14-2(a).]

A second provision of the JLA, authorizing a reduction in N.J.S.A. 2C:14-2(a)'s enhanced mandatory minimum term of incarceration by virtue of a negotiated plea agreement, was introduced in the Senate Committee Substitute for Senate Bill No. 215. See S. Law & Pub. Safety Comm. Statement to S. 215 1 (Jan. 30, 2014). As enacted, that subsection provides:

> Notwithstanding the provisions of subsection a. of this section, where a defendant is charged with a violation under paragraph (1) of subsection a. of this section, the prosecutor, in consideration of the interests of the victim, may offer a negotiated plea agreement in which the defendant would be sentenced to a specific term of

who was kidnapped, sexually assaulted, and murdered by a registered sex offender, imposed a twenty-five-year mandatory term of imprisonment on defendants convicted of certain sexual crimes against children and mandated "satellite monitoring to track the location of sex offenders after release." Ibid. The satellite monitoring provisions of Florida's Jessica Lunsford Act were substantially replicated in a statute enacted by the New Jersey Legislature in 2007. Compare Fla. Stat. §§ 947.1405, 948.063, 948.11, 948.30(3), with N.J.S.A. 30:4-123.89 to -123.99.

imprisonment of not less than 15 years, during which the defendant shall not be eligible for parole. In such event, the court may accept the negotiated plea agreement and upon such conviction shall impose the term of imprisonment and period of parole ineligibility as provided for in the plea agreement, and may not impose a lesser term of imprisonment or parole or a lesser period of parole ineligibility than that expressly provided in the plea agreement. The Attorney General shall develop guidelines to ensure the uniform exercise of discretion in making determinations regarding a negotiated reduction in the term of imprisonment and period of parole ineligibility set forth in subsection a. of this section.

[N.J.S.A. 2C:14-2(d).]

According to the Attorney General, N.J.S.A. 2C:14-2(d) was enacted in recognition of "the need to provide an incentive for guilty defendants to plead guilty to spare the victim from having to participate in a trial." JLA Guidelines at 1.

B.

As the Legislature directed, the Attorney General issued the JLA Guidelines to the Division of Criminal Justice, for use in cases prosecuted by the Division, and to county prosecutors. In the JLA Guidelines, the Attorney General identified the following "factors and circumstances in consideration of the interests of the victim":

a. The degree of physical and emotional harm suffered by the victim and members of the victim's immediate family;

14

b. The interest of the victim and members of the victim's immediate family in avoiding the need to testify at trial or a pretrial hearing;

c. The interest of the victim and members of the victim's immediate family in avoiding the need to listen to testimony recounting the crime and/or its impact;

d. The immediate and long-term interest of the victim and members of the victim's immediate family in not having details of the crime and its impact publicized at a trial;

e. The interest of the victim and members of the victim's immediate family in the swiftest possible resolution of the criminal matter;

f. The interest of the victim and members of the victim's immediate family in the certainty of conviction resulting from a guilty plea;

g. the position of the victim, where appropriate given his or her age, and the victim's parent(s)/legal guardian(s) regarding the plea agreement; and

h. the prosecutor's assessment of the likelihood of obtaining a guilty verdict at a trial, recognizing that an acquittal on the aggravated sexual assault charge or adverse rulings in pretrial motions would impact adversely the interests of the victim and members of the victim's immediate family.

[JLA Guidelines at 2-3.]

The Attorney General mandated that prosecutors consider the enumerated factors when they determine "the amount of the reduction in the

15

stipulated 25-year term of parole ineligibility." Id. at 3.[5] That determination "is vested in the reasoned discretion of the prosecutor and latitude therefore is afforded to reduce the stipulated sentence based upon variable factors considering the interests of the victim." Ibid.

In accordance with N.J.S.A. 52:4B-36, which identifies the rights of crime victims in the criminal justice system, the JLA Guidelines require the prosecutor to consult with the victim's parents or legal guardians before offering a defendant a plea agreement that reduces N.J.S.A. 2C:14-2(a)'s twenty-five-year period of parole ineligibility. JLA Guidelines at 4. Should the victim's parents or legal guardians object to such a plea offer, the Guidelines bar the prosecutor from making that offer "unless the County Prosecutor, or [the] Director of the Division of Criminal Justice in cases prosecuted by the Division, determines in writing that the plea offer is

---

[5] To ensure "the greatest possible incentive" for a defendant to plead guilty early in the proceeding, the Guidelines generally authorize prosecutors to offer a plea agreement providing for the shortest period of parole ineligibility -- fifteen years -- "only if the defendant agrees to plead guilty before indictment." JLA Guidelines at 3. After indictment, a prosecutor may not offer a plea agreement providing for a term of parole ineligibility less than eighteen years, unless the county prosecutor, or the Director of the Division of Criminal Justice in cases prosecuted by the Division, "determines in writing that there has been a material change in circumstances that, considering the factors [enumerated in the JLA Guidelines], justifies a post-indictment plea offer that provides for a term of parole ineligibility between 15 and 18 years." Ibid.

appropriate and in the best interests of the victim notwithstanding the objection." Ibid. The prosecutor must inform the court of any such objection. Ibid.

The JLA and the Attorney General's JLA Guidelines recognize the court's discretion to accept or reject a plea agreement entered into by the defendant and the State. See N.J.S.A. 2C:14-2(d) (providing that the court "may" accept the negotiated plea agreement); JLA Guidelines at 1 ("If the court accepts the negotiated disposition, . . . ." (emphasis added)). The JLA Guidelines, however, do not require the prosecutor to provide to the court a statement of reasons justifying the proposed reduction of the twenty-five-year term of incarceration and period of parole ineligibility imposed by N.J.S.A. 2C:14-2(a). See N.J.S.A. 2C:14-2(a), (d); JLA Guidelines. Accordingly, no statutory provision or Guideline ensures that the court is informed of the prosecutor's reasoning when it determines whether to accept or reject a plea agreement offered pursuant to N.J.S.A. 2C:14-2(a).

## IV.

## A.

Against that backdrop, we consider defendant's separation of powers challenge to the JLA.

17

Defendant "must sustain a heavy burden in order to succeed in [his] assertion of the invalidity of the challenged legislation." State v. Trump Hotels & Casino Resorts, 160 N.J. 505, 526 (1999). "We will give, as we must, deference to any legislative enactment unless it is unmistakably shown to run afoul of the Constitution." Lewis v. Harris, 188 N.J. 415, 459 (2006). The foundation for the presumption of constitutionality that attaches to every statute

> is solid and clear: the challenged law "represents the considered action of a body composed of popularly elected representatives," and, as Justice Oliver Wendell Holmes admonished, "it must be remembered that legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts."
>
> [State v. Buckner, 223 N.J. 1, 14 (2015) (quoting N.J. Sports & Exposition Auth. v. McCrane, 61 N.J. 1, 8-9 (1972)).]

When we conduct appellate review in a constitutional challenge to a statute, "we owe no deference to either the trial court's or Appellate Division's conclusions of law." State v. Pomianek, 221 N.J. 66, 80 (2015); see also Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). "Our review is therefore de novo." Pomianek, 221 N.J. at 80.

18

B.

1.

The New Jersey Constitution prescribes the separation of powers among the three branches of government:

> The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution.
>
> [N.J. Const. art. III, ¶ 1.]

New Jersey's constitutional provision for separation of powers "was designed to 'maintain the balance between the three branches of government, preserve their respective independence and integrity, and prevent the concentration of unchecked power in the hands of any one branch.'" Commc'ns Workers of Am., AFL-CIO v. Florio, 130 N.J. 439, 449 (1992) (quoting David v. Vesta Co., 45 N.J. 301, 326 (1965)). Nonetheless, as the Court has explained, "the doctrine requires not an absolute division of power but a cooperative accommodation among the three branches of government." Ibid.; see also In re P.L. 2001, Chapter 362, 186 N.J. 368, 379 (2006) (holding that the separation of powers doctrine exists "not to create three 'watertight' governmental compartments, stifling cooperative action among the executive, legislative and judicial branches," but "to guarantee a system in which one

19

branch cannot 'claim[] or receiv[e] an inordinate power'" (alterations in original) (quoting Commc'ns Workers, 130 N.J. at 450)); Brown v. Heymann, 62 N.J. 1, 11 (1972) ("[T]he doctrine necessarily assumes the branches will coordinate to the end that government will fulfill its mission.").

2.

The separation of powers question considered in this appeal arises in the context of criminal sentencing, a function that "does not fit neatly within a single branch of government." Lagares, 127 N.J. at 27.

The Legislature is constitutionally empowered to "define[] crimes and establish[] the appropriate punishment for their commission," and that authority "includes the ability to enact mandatory-sentencing statutes that eliminate any opportunity for a lesser punishment." Ibid.; see also State v. Cannon, 128 N.J. 546, 563 (1992) (noting that the Legislature is empowered to "mandate imprisonment for certain crimes, leaving no judicial discretion").

The sentencing prerogatives of the prosecutor, a member of the executive branch, include "determin[ing] the extent of a defendant's sentencing exposure when deciding what charges will be brought." Lagares, 127 N.J. at 27; see also State v. Moorer, 448 N.J. Super. 94, 104 (App. Div. 2016) ("[T]he selection of the charge rests in the sound discretion of the

20

prosecutor." (quoting State v. D.V., 348 N.J. Super. 107, 115-16 (App. Div. 2002), aff'd o.b., 176 N.J. 338 (2003))).

Notwithstanding the important roles of the coordinate branches in sentencing, however, the determination of "[a] criminal sentence is always and solely committed to the discretion of the trial court to be exercised within the standards prescribed by the Code of Criminal Justice." State v. Hess, 207 N.J. 123, 151 (2011) (quoting State v. Warren, 115 N.J. 433, 447 (1989)); see also Lagares, 127 N.J. at 27-28.

In Lagares, this Court considered a defendant's separation of powers challenge to a statute that delegated sentencing discretion to prosecutors in certain drug cases. 127 N.J. at 24. Because the defendant had previously been convicted of predicate drug offenses, he was eligible to be sentenced for subsequent drug convictions to an extended term of incarceration under N.J.S.A. 2C:43-6(f). Ibid. That statute mandated the imposition of an extended term "upon application of the prosecuting attorney . . . notwithstanding that extended terms are ordinarily discretionary with the court." Ibid. (emphasis removed) (quoting N.J.S.A. 2C:43-6(f)).

The Court agreed with the defendant in Lagares that, in the absence of guidelines or "any avenue for effective judicial review," N.J.S.A. 2C:43-6(f) would be unconstitutional. Id. at 31. It explained:

21

> Where the Legislature has permitted the executive to
> select defendants for enhanced punishment or favorable
> treatment, this Court has generally required that
> decision-making be carried out in a fashion that limits
> potential arbitrariness. In addition, we have required
> that the judiciary retain the power to review
> prosecutorial decisions to avoid abuses of discretion.

[Id. at 28.]

Noting its obligation "to so construe the statute as to render it constitutional if it is reasonably susceptible to such interpretation," the Court imposed three requirements. Id. at 32 (quoting State v. Profaci, 56 N.J. 346, 350 (1970)). First, the Court interpreted N.J.S.A. 2C:43-6(f) "to require that guidelines be adopted to assist prosecutorial decision-making with respect to applications for enhanced sentences" pursuant to the statute. Ibid.[6] Second, "to permit effective review of prosecutorial sentencing decisions," the Court required prosecutors to "state on the trial court record the reasons for seeking an extended sentence." Ibid. Finally, the Court concluded that the Legislature had not intended "to circumvent the judiciary's power to protect defendants from arbitrary application of enhanced sentences" and thus confirmed that "an

---

[6] The Court noted that the guidelines "should reflect the legislative intent [in N.J.S.A. 2C:43-6(f)] to make extended sentencing of repeat drug offenders the norm rather than the exception," but cautioned prosecutors that "the Legislature did not mandate extended sentences, recognizing that in certain circumstances enhanced punishment may be unwarranted." Id. at 32.

extended term may be denied or vacated" upon a showing that the prosecutor's decision to seek that sentence was arbitrary and capricious. Id. at 33.

Following Lagares, the Attorney General issued to the Director of the Division of Criminal Justice and all county prosecutors the Directive Implementing Guidelines for Determining Whether to Apply for an Extended Term Pursuant to N.J.S.A. 2C:43-6(f) (Apr. 20, 1992), https://dspace.njstatelib.org/xmlui/bitstream/handle/10929/33900/njkfn2383.2a35a21992.pdf?sequence=1&isAllowed=y. Those Guidelines "govern[ed] the exercise of prosecutorial discretion under N.J.S.A. 2C:43-6(f)." Brimage, 153 N.J. at 13 n.1.

In contrast to Lagares, in which the defendant's sentence followed his conviction at trial, the Court's decision in Vasquez addressed prosecutorial discretion in plea bargaining pursuant to Rule 3:9-3, and is thus directly relevant to this appeal.

Our case law and the governing court rule assign distinct roles to the prosecutor and the court in plea bargaining. When a prosecutor and defense counsel consider a plea agreement, they "engage in discussions about [pleas and sentences] as will promote a fair and expeditious disposition of the case." R. 3:9-3. "The prosecutor's function in this connection is strictly limited to an agreement to recommend a form of leniency, to which recommendation the

23

court in its discretion after being made aware of the full situation would give due consideration." Warren, 115 N.J. at 448 (emphasis removed) (quoting State v. Taylor, 49 N.J. 440, 455 (1967)). With limited exceptions enumerated in the court rule, "the judge shall take no part in such discussions." R. 3:9-3; see Warren, 115 N.J. at 448 ("Strict limitations on judicial participation in plea negotiations relate to the concern that judicial neutrality and objectivity must be preserved."); State v. Williams, 277 N.J. Super. 40, 48 (App. Div. 1994) ("[A] judge may not participate in plea negotiations . . . especially over the objection of the prosecutor.").

The judge, however, retains the exclusive authority to sentence the defendant; "[e]ven when the State and a defendant have entered into a plea agreement, a court in discharging its sentencing duties may not simply accept the arrangement without reviewing its factual support and the circumstances surrounding its formation." Lagares, 127 N.J. at 28.

In Vasquez, the Court considered the separation of powers implications of plea bargaining under N.J.S.A. 2C:35-12, a provision of the Comprehensive Drug Reform Act (CDRA), N.J.S.A. 2C:35-1 to 36A-1, that substantially expanded prosecutorial discretion in drug prosecution plea agreements. 129 N.J. at 197-209. N.J.S.A. 2C:35-12 authorized the prosecutor to waive the statutory period of parole ineligibility as part of a negotiated plea agreement or

24

post-conviction agreement and barred the sentencing court from imposing "a lesser term of imprisonment[] [or a lesser] period of parole ineligibility . . . than that expressly provided for under the terms of the plea or post-conviction agreement." Id. at 198 (quoting N.J.S.A. 2C:35-12).

The appeal in Vasquez arose from a plea agreement in which the prosecutor waived the three-year period of parole ineligibility mandated by N.J.S.A. 2C:35-7 for certain drug offenses committed in a school zone, with the stipulation that if the defendant violated probation and appeared before the court to be sentenced for that offense, the State would not waive the mandatory sentencing provisions of the statute. Id. at 192. The defendant violated his probation and was sentenced to a four-year custodial term with three years' parole ineligibility. Id. at 193. The Appellate Division vacated the sentence, and the Court granted the State's petition for certification. Ibid.

The defendant argued before this Court that the Legislature's grant of prosecutorial discretion in N.J.S.A. 2C:35-12 contravened separation of powers principles. Id. at 195. The Court viewed the separation of powers issue in Vasquez to be "similar to that resolved in Lagares," and concluded that "the same interpretation is appropriate." Id. at 196. It construed N.J.S.A. 2C:35-12 to preserve judicial authority to reject a plea bargain or post-conviction agreement that waived, or did not waive, the statutory parole

25

disqualifier in the event that the prosecutor's discretion was exercised in an arbitrary or capricious manner:

> Judicial oversight is mandated to protect against arbitrary and capricious prosecutorial decisions. To that end, the prosecutor should state on the record the reasons for the decision to waive or the refusal to waive the parole disqualifier. A defendant who shows clearly and convincingly that the exercise of discretion was arbitrary and capricious would be entitled to relief. Those standards prevent the legislative goal of uniformity in sentencing from being undermined by unreviewable prosecutorial discretion.
>
> So interpreted, the statute does not violate the doctrine of separation of powers, and we reject defendant's contrary contention.
>
> [Id. at 196-97 (citations omitted).]

In the wake of Vasquez, the Attorney General issued plea-bargaining Guidelines for the drug offense sentencing statutes that the Court considered in that decision. Brimage, 153 N.J. at 13. In Brimage, the Court held that the Guidelines issued in response to Vasquez fell short of the mark. Id. at 14-15. It ruled that although the Attorney General expressly sought "to ensure a uniform, consistent and predictable sentence for a given offense," id. at 13 (emphasis removed), the Guidelines improperly "direct[ed] each county prosecutor's office to adopt and implement its own written policy governing plea and post-conviction agreements, using the Guidelines as a model," and authorized county-specific "standardized plea offers for typical cases and

26

offenders," id. at 14-15. To the Court, a 1997 Supplemental Directive from the Attorney General to the county prosecutors similarly "fail[ed] to limit the discretion authorized" by the prior Guidelines and "thus maintain[ed] the resulting intercounty disparity." Id. at 16. In the Court's view,

> [t]he intercounty disparity authorized by the Attorney General's Guidelines, both before and after their amendment, violates the goals of uniformity in sentencing and, thus, not only fails on statutory grounds, but also threatens the balance between prosecutorial and judicial discretion that is required under Vasquez, 129 N.J. 189. The Guidelines fail to appropriately channel prosecutorial discretion, thus leading to arbitrary and unreviewable differences between different localities.
>
> [Id. at 22-23.]

To correct that sentencing disparity, the Court ordered in Brimage that the Attorney General promulgate "new plea offer guidelines, which all counties must follow." Id. at 24-25. It directed that the revised guidelines "specify permissible ranges of plea offers for particular crimes" and that they be "more explicit regarding permissible bases for upward and downward departures." Id. at 25. "[T]o permit effective judicial review," the Court required that prosecutors "state on the record their reasons for choosing to waive or not to waive the mandatory minimum period of parole ineligibility specified in the statute," and their reasons for any departure from the guidelines. Ibid.

27

Following the Court's decision in <u>Brimage</u>, the Attorney General issued uniform Guidelines -- now known as the "<u>Brimage</u> Guidelines" -- for prosecutors negotiating plea agreements and post-conviction agreements under N.J.S.A. 2C:35-12.  <u>See</u> <u>Revised Attorney General Guidelines for Negotiating Cases under N.J.S.A. 2C:35-12</u> (July 15, 2004), https://www.state.nj.us/lps/ dcj/agguide/directives/brimage_all.pdf.  In the <u>Brimage</u> Guidelines, the Attorney General provided detailed instructions to prosecutors regarding the exercise of their discretion in tendering plea offers under N.J.S.A. 2C:35-12 that waive or reduce otherwise mandatory terms of imprisonment and parole ineligibility for certain drug offenses.

## C.

We derive three core principles from the Court's resolution of separation of powers challenges to statutes granting sentencing discretion to prosecutors in <u>Lagares</u>, <u>Vasquez</u>, and <u>Brimage</u>.

First, the Attorney General must promulgate uniform statewide guidelines designed to channel that discretion and minimize sentencing disparity between counties, taking into account the legislative objective in the sentencing statute.  <u>Brimage</u>, 153 N.J. at 23; <u>Vasquez</u>, 129 N.J. at 195; <u>Lagares</u>, 127 N.J. at 31-32.

Second, in order to facilitate effective judicial review, the prosecutor must provide a written statement of reasons for his or her exercise of prosecutorial discretion. Brimage, 153 N.J. at 25; Vasquez, 129 N.J. at 196; Lagares, 127 N.J. at 32.

Third, the sentencing court maintains oversight to ensure that prosecutorial discretion is not exercised in an arbitrary and capricious manner. Vasquez, 129 N.J. at 195-96; Lagares, 127 N.J. at 33.

Those three procedural safeguards allow for effective judicial review of the prosecutor's exercise of discretion granted by the Legislature, thus satisfying separation of powers principles. As we recently noted in the context of prosecutorial decisions whether to waive mandatory minimum sentences pursuant to the Graves Act, N.J.S.A. 2C:43-6.2, courts are in a position to conduct meaningful judicial review where "prosecutors are guided by standards, inform defendants of the basis for their decisions, and are subject to judicial oversight." State v. Benjamin, 228 N.J. 358, 373 (2017).

D.

The JLA Guidelines that govern plea bargaining pursuant to N.J.S.A. 2C:14-2(d) satisfy Lagares, Vasquez, and Brimage, with one necessary addition: a requirement that prosecutors provide a statement of reasons for a

29

decision to offer a plea bargain in which the term of incarceration or period of parole ineligibility is less than that prescribed in N.J.S.A. 2C:14-2(a).

The Guidelines properly apply to all county prosecutors and to the Division of Criminal Justice when it handles a JLA case; they do not authorize prosecutors' offices to develop county-specific standards and procedures, as did the Guidelines rejected in Brimage, 153 N.J. at 13-16.[7] They provide clear and practical guidance for prosecutors charged with making plea-bargaining determinations in accordance with N.J.S.A. 2C:14-2(a). Moreover, the victim-centered factors identified in section 1 of the JLA Guidelines reflect the Legislature's focus on "the interests of the victim" in N.J.S.A. 2C:14-2(d). They are consonant with legislative intent.

The JLA Guidelines should be amended to instruct prosecutors to provide the sentencing court with a statement of reasons for a decision to offer a defendant, in a plea agreement, a term of incarceration or a term of parole

---

[7] At oral argument, counsel for defendant expressed concern about the uniform application of the JLA throughout the State. We decline to address defendant's uniformity argument, which was not asserted before the sentencing court or the Appellate Division, and is not supported by an adequate record. We also recognize the difficulty of comparing results across vicinages because the amount of the sentence reduction in a given case depends heavily on the victim's situation and interests. That said, the Attorney General is free to review and enhance section 2 of the JLA Guidelines ("Amount of Reduction") to further channel the discretion of prosecutors across the State and avoid disparate results.

ineligibility between fifteen and twenty-five years. Such a statement is essential to effective judicial review for the arbitrary and capricious exercise of prosecutorial discretion under N.J.S.A. 2C:14-2(d).

We recognize that in the JLA setting, the statement of reasons may implicate mental and physical health records and other confidential information regarding the victim and members of the victim's immediate family. See JLA Guidelines § 1 (a)-(f) (identifying factors that may relate to the mental and physical health of the victim or members of his or her immediate family). In the statement of reasons, the prosecutor ordinarily need not disclose confidential, sensitive information about the victim or members of his or her immediate family including, for example, information relating to mental or physical health; a general representation as to the potential impact of a trial should provide the court with an adequate basis for judicial review. In the event that a prosecutor concludes that it is necessary in a given case to reveal such confidential information in a statement of reasons, the court should hold an in camera hearing to consider that information. See Pressler & Verniero, Current N.J. Court Rules, cmts. 2.1.3 and 2.2 on R. 1:2-1 (2019).

In this case, the prosecutor did not provide the sentencing court with a statement of reasons for his decision to offer defendant a twenty-year term of incarceration with a twenty-year period of parole ineligibility. On remand, the

31

prosecutor should provide such a statement of reasons to the sentencing court. The court should review whether the prosecutor's exercise of discretion was arbitrary and capricious. If the sentencing court finds that the prosecutor's action was arbitrary and capricious, it should vacate its order denying defendant's motion to modify his sentence; the court should then permit defendant to withdraw his guilty plea as to first-degree aggravated sexual assault or renegotiate his plea agreement. If the sentencing court does not find the prosecutor's action to be arbitrary and capricious, it should resentence defendant as directed by the Appellate Division's decision, which we leave undisturbed aside from the single issue as to which we granted certification. See A.T.C., 454 N.J. Super. at 259; accord supra note 3.

## V.

We hold that the JLA does not violate the separation of powers doctrine, provided that the State presents a statement of reasons explaining its decision to depart from the twenty-five year mandatory minimum sentence specified in N.J.S.A. 2C:14-2(a), and the court reviews the prosecutor's exercise of discretion to determine whether it was arbitrary and capricious. So that the standard we adopt today may be applied in this matter, we remand to the sentencing court for further proceedings in accordance with this opinion.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE PATTERSON'S opinion.